837 So.2d 554 (2003)
Bobby L. GRAHAM, Petitioner,
v.
Ken JENNE, Sheriff in and for Broward County, Florida, Respondent.
No. 4D02-4590.
District Court of Appeal of Florida, Fourth District.
February 12, 2003.
*555 Alan H. Schreiber, Public Defender, and Donald J. Cannarozzi, Assistant Public Defender, Fort Lauderdale, for petitioner.
Charlie Crist, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for respondent.
PER CURIAM.
Bobby Graham petitions this court for a writ of habeas corpus claiming that he was improperly committed in order to restore his competency to proceed with trial. We agree that the trial court erred in ordering his involuntary commitment to the Department of Children and Families ("DCF") and grant the petition.
Graham, age thirty-eight and a deaf mute since birth, communicates using limited sign language. He allegedly entered a home, took property, and then pawned it. Graham was later arrested for burglary and dealing in stolen property. Believing him incompetent to proceed, given Graham's deafness and linguistic deficiency, his attorney sought the court's appointment of experts to determine Graham's competency pursuant to Florida Rule of Criminal Procedure 3.211.
The trial court held several hearings to determine Graham's competency to proceed. At the first hearing, a forensic psychologist said that he tested Graham's I.Q. and determined that he was neither mentally retarded nor suffering from any mental illness.
Another expert, a clinical psychologist who worked with the deaf, testified that her testing of Graham revealed low cognitive functioning and a low average intelligence. This expert further testified that while Graham was neither mentally retarded nor suffering from any mental illness, he was not competent to proceed given his inability to process abstract concepts and terms used in a legal setting, such as "judge" or "jury." She opined that Graham's intellectual functioning suggested he was capable of learning, but that his trial *556 would have to be conducted in a very slow, methodical way. She believed that Graham was not a danger to himself or to others and that he did not meet the criteria for involuntary commitment.
Lastly, a psychologist with expertise in deaf culture testified that Graham would not be able to understand the most basic legal terms such as "jury," "prosecutor," or "judge," since his limited sign language did not contain such words. The psychologist testified that Graham generally understood the charges against him, but that he could not participate in his own defense. He also agreed that Graham was not mentally retarded and did not suffer from any mental illness. He thought it unlikely that Graham would ever gain competency.
The trial court initially indicated it would keep Graham in the county jail and have a psychologist attempt to work with him to gain competence to stand trial or enter a plea. After counsel objected to using the county jail as a holding facility, the court then ordered Graham to be held at the county jail on the basis that his past criminal history made him a "danger to the community." The court deferred its ruling on Graham's competency.
A week later, the trial court entered an order finding that Graham had no mental illness, but was borderline mentally retarded. The court ruled that Graham lacked the capacity to consult with his attorney with a reasonable degree of rational understanding and that he also lacked the communication and comprehension skills necessary to meet the basic due process standards to stand trial. The trial court declared him incompetent to proceed. The court also determined that Graham met the statutory definition of "retardation" under section 916.106(12), Florida Statutes (2001), given his significantly sub-average general intellectual functioning. The court committed him to DCF for training appropriate for his form of retardation and his physical handicap of deafness.
DCF moved to intervene so that it could appeal the court's order. Graham's counsel, in turn, moved for rehearing arguing that the expert's testimony at the hearing indicated Graham did not meet the criteria for involuntary confinement. Thereafter, the trial court entered an order granting DCF's motion to intervene and stayed its earlier order adjudging Graham incompetent to proceed.
At a later status hearing, Graham's counsel advised the court that the state had offered a plea bargain. Counsel indicated that despite his exhaustive efforts, he was unable to get Graham to understand the concepts involved in entering a plea. Counsel did not think Graham understood the rights he would waive by accepting the state's offer. Counsel then called one of the previous experts, who testified that Graham did not meet the criteria for involuntary commitment because he did not pose an imminent risk of danger to himself or others. He stated that Graham had no plan to harm himself or anyone else.
A licensed clinical social worker also testified that she would work with Graham weekly and try, if possible, to give him the linguistic tools that he needed to be legally competent. The state advised the court that Graham had six prior burglaries, and asserted that Graham appeared to be following the proceeding. The court spoke with Graham, commented that he was exaggerating his disability and questioned whether Graham was feigning the extent of his lack of understanding. The trial court then continued the matter and appointed another psychologist to evaluate his competency.
*557 The court also received a written report[1] prepared by a DCF staff psychologist which indicated Graham's recent I.Q. scores were "above the level of Mental Retardation" and that "there [were] no significant deficits in [his] overall social adaptive functioning."
At the third hearing, the court-appointed expert testified that Graham was incompetent to proceed, but did not meet the criteria for involuntary hospitalization. The psychologist recommended that Graham be sent to a county facility where DCF could be brought in to teach him the necessary signing language to restore his competency. The court asked the expert witness to elaborate on her conclusion that Graham was not a danger to himself or to others as defined by the criteria for involuntary hospitalization. The expert did not believe Graham to be directly violent, but thought, in an indirect way, that he could harm himself or someone else. She told the court that given Graham's deafness and his propensity to commit burglaries, he could find himself in a home where he may not hear the residents and could be shot, or if he saw that he was being discovered, he might attempt to leave and inadvertently harm someone else. She did not believe Graham was feigning his mental deficiencies and was uncertain whether he would ever be restored to competency.
At the conclusion of this hearing the court declared Graham incompetent to proceed. The court ordered Graham to be committed into the custody of DCF and housed at a custodial facility that would administer treatment to restore his competency to proceed. In its order, the court determined: "For purposes of commitment and treatment, the Defendant's form of linguistic incompetence is analogous to mental retardation albeit the Defendant does not meet the statutory definition." The court further found that Graham was a danger to the community, noting that his record reflected seven prior felony convictions, six of which were burglaries, and that if left to his own devices, he would again endanger the citizens of Broward County by committing another burglary.
Graham, who remains in custody at the Broward County Jail awaiting transfer to a DCF facility, now petitions this court for a writ of habeas corpus discharging him from his involuntary commitment.
Florida Rule of Criminal Procedure 3.212(c)(3)(A) provides that a defendant may be "committed for treatment to restore a defendant's competence to proceed" if the "defendant meets the criteria for commitment as set forth by statute." Chapter 916, governs the involuntary commitment of mentally deficient and mentally ill defendants. The statute is divided into three parts: Part I provides general provisions; Part II establishes forensic services for persons who are mentally ill; and Part III provides forensic services for those who are retarded or autistic. The terms "retardation," "mental illness," and "incompetent to proceed," are defined by statute. See § 916.106(9), (11)-(12), Fla. Stat. (2002). If an accused is mentally ill or retarded and is adjudicated incompetent to proceed, he or she may be involuntarily committed under either Part II or Part III of Chapter 916.
In Part II, section 916.13 authorizes a court to involuntarily commit an accused who is adjudicated mentally ill and incompetent to proceed. In Part III, the court's authority to order the involuntary commitment of someone who is retarded and adjudicated incompetent to proceed is governed by section 916.302.
*558 There is no doubt that Graham is "incompetent to proceed" as that term is defined in section 916.106(9). A number of psychologists agreed that Graham is incompetent to proceed given his deafness from birth and his inability to understand the proceedings against him.
A crucial question is whether Graham is mentally ill or retarded. If either, a court is authorized to order his involuntary commitment under Parts II or III. If not, Chapter 916 does not permit a court to order a defendant committed simply because he is incompetent to proceed.
The trial court determined that Graham was "borderline retarded." The court improperly analogized prelinguistic deafness and low intelligence with mental retardation, as defined in section 916.106(12).[2] Three experts testified that Graham was not mentally retarded or suffering from mental illness. One psychologist, whose expertise is deaf culture, testified that persons born deaf do not learn abstract concepts that are used in the legal system because their language has no signs for even the most basic legal terminology. Another explained that Graham cannot process abstract concepts and that he cannot understand the terms that are used in a legal setting. Intelligence testing revealed that Graham's I.Q. is "above the level of Mental Retardation." Equating his linguistic deficiency and low I.Q. scores with mental retardation is not supported by the record and contravenes the definition of "retardation" found in section 916.106(12).
Even if Graham met the definition of "retarded," the trial court would not have been able to commit him because his previous non-violent burglaries did not rise to the level of danger required by section 916.302(1)(b). Before a retarded, incompetent defendant can be involuntarily committed, section 916.302(1)(b) requires clear and convincing evidence that "[t]here is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on himself or herself or another person, as evidenced by recent behavior causing, attempting or threatening such harm." § 916.302(1)(b), Fla. Stat. (2002). Several experts testified that Graham did not present a threat to himself or others. There was no evidence that Graham was a violent person who would directly harm himself or others.
We reject the sheriff's argument that section 916.13 authorizes Graham's commitment because this statute envisions two groups that may be involuntarily committedthose who are deemed incompetent to proceed because they are "mentally ill" under section 916.13(1)(a), and those who are deemed incompetent to proceed for some other reason under section 916.13(1)(b).
Such an interpretation ignores the well-established principle that statutes are to be read in their entirety. See Burdick v. State, 594 So.2d 267 (Fla.1992). "A *559 basic principle of statutory construction requires that `all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.'" M.W. v. Davis, 756 So.2d 90, 101 (Fla.2000) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)) (emphasis in original). Additionally, "[s]tatutes which authorize the deprivation of an individual's liberty must be strictly construed." Lee v. State, 546 So.2d 436, 437 (Fla. 5th DCA 1989).
Section 916.13(1)(a)-(c), Florida Statutes (2002), addresses the involuntary commitment of those defendants deemed incompetent to proceed because they are mentally ill. The absence of the word "and" before subsection (b) does nothing to change the plain meaning of section 916.13 and does not create another group of individuals, apart from the mentally ill, who may be committed. The drafter's use of a semicolon at the end of section 916.13(1)(a)2. does not signify a complete break between subsections (a) and (b), but a close relationship between the two. See WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE pt. I, § 5 (3d ed.1979). The use of "and" at the end of subsection (b) indicates that subsection (c) is the last component of the list of requirements for involuntary commitment contained in section 916.13(1).
Here there was a lack of clear and convincing evidence that Graham was suffering from a "mental illness" as defined in section 916.106(11), or that there was a "substantial likelihood that in the near future" Graham would "inflict serious bodily harm on" himself or another person. § 916.13(1)(a)2., Fla. Stat. (2002).
Graham is incompetent to proceed to trial because he is a deaf mute and his sign language skills do not include legal terms required for him to either enter a plea or proceed to trial. He does not meet the requirements of Chapter 916 for involuntary commitment to DCF.
However, Florida Rule of Criminal Procedure 3.212 provides other options. Rule 3.212(c)(2) states that if an incompetent defendant is incarcerated, "the court may order treatment to be administered at the custodial facility." This means that an incompetent defendant who satisfies the requirements for pretrial detention may be treated at the facility where he is being held prior to trial. Rule 3.212(d) allows a court to order appropriate release conditions for up to a year, including outpatient treatment at an appropriate local facility and reporting for further evaluation, if a defendant is not mentally competent but does not meet the criteria for commitment.
Accordingly, we grant Graham's petition for writ of habeas corpus and remand this matter to the trial court for further proceedings consistent with our decision.
KLEIN, SHAHOOD and GROSS, JJ., concur.
NOTES
[1] DCF's Program Office of Developmental Disabilities Statement to the Circuit Court of the Seventeenth Judicial Circuit, dated July 16, 2002.
[2] Section 916.106(12), Florida Statutes (2002), provides:

"Retardation" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. "Significantly subaverage general intellectual functioning," for the purpose of this definition, means performance which is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the department. "Adaptive behavior," for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of the individual's age, cultural group, and community.