ROTHENBERG, J.
The State of Florida appeals from a non-final order finding Hugo Miranda (“the defendant”) incompetent to proceed and from related orders.[1] Because the State’s request for an evidentiary hearing should have been granted, we reverse the orders under review and remand for an evidentia-ry hearing.
Factual and Procedural Background
The defendant was arrested and charged with the aggravated stalking of two minors in April 2011. Soon thereafter, the trial court ordered pretrial release of the defendant on the condition that the defendant stay away from the victims. Within days of his release, however, the defendant was re-arrested and later charged in two separate cases with the aggravated stalking of the same two minors, and his pretrial release was revoked. While the defendant was incarcerated, he was evaluated by three psychologists, Dr. Gustavo Fonte, Dr. Elsa Marban, and Dr. Marie DeFeo, to determine whether the defendant was competent to proceed. In evaluating the defendant’s competency, each of the psychologists- considered the factors articulated in section 916.12(3)(a)-(f), Florida Statutes (2011), including whether the defendant had the capacity to: appreciate the charges or allegations; appreciate the range and nature of possible penalties; understand the adversarial nature of the legal process and proceedings; communicate with and disclose pertinent information to his attorney; appropriately assist in his defense; manifest appropriate courtroom behavior; and testify relevantly. Based on their independent evaluations, all three psychologists concluded the defendant did not have a mental illness,[2] but was incompetent to proceed due to his intellectual deficits. The psychologists also concluded .that the defendant did not meet the criteria for involuntary commitment under Chapter 916, Florida Statutes (2011), because, in their opinion, the defendant did not pose a danger to himself or others.
Dr. Fonte found that the only identified competency factor the defendant sufficiently demonstrated was his ability to manifest appropriate courtroom behavior. In his report, Dr. Fonte described the defendant as a “primitive individual at the cognitive level,” and opined that the defendant “appears to be cognitively and intel- *1135 lectuaUy limited and likely functions at a borderline intellectual level.” Dr. Fonte additionally noted that the defendant had no schooling and cannot read or write.
Dr. Marban noted in her report that she had not performed any formal intellectual testing, but nonetheless suspected that the defendant suffers from mental retardation and/or a developmental disorder. She also opined that the defendant “is not restora-ble to competency due to his concrete thinking style and deficit cognitive abilities.” Dr. DeFeo, who also concluded that the defendant is incompetent to proceed, appeared somewhat more optimistic regarding the defendant’s ability to obtain competency to proceed with treatment or training.
After the psychologists submitted their reports, the trial court conducted several hearings to address the defendant’s competence to proceed. See Fla. R. Crim. P. 3.212(b). At a hearing conducted on December 13, 2011, the State conditionally stipulated to the psychologists’ reports regarding the defendant’s incompetency. At subsequent hearings, however, the State maintained that, despite the defendant’s incompetency to proceed, the defendant was being properly held in custody based on his violation of his pretrial release conditions, and that the trial court should order the defendant to receive his competency treatment in jail pursuant to Graham v. Jenne, 837 So.2d 554, 559 (Fla. 4th DCA 2003), and Florida Rule of Criminal Procedure 3.212(c)(2). Initially agreeing with the State, the trial court orally ordered that the defendant be detained and that he receive the necessary treatment to achieve competency to proceed. The written order subsequently entered by the trial court found the defendant incompetent to proceed, but failed to address any of the factors required by Chapter 916, Graham, or rule 3.212(c)(2).
Shortly after the trial court issued its written order, Dr. Fonte and Dr. DeFeo submitted addenda to their competency evaluations. Both Dr. Fonte and Dr. De-Feo recommended competency training outside of the jail setting based on the defendant’s deficits and specific needs, but did not specify the type of training necessary or where such training was available.
After reviewing these reports, as well as the defendant’s motions for reconsideration and for release, the trial court concluded that, based on Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), it was required to release the defendant. Thereafter, the trial court entered its written order granting the defendant’s motion for reconsideration and for release and also denied the State’s oral motion for an evidentiary hearing regarding the defendant’s competency and to determine whether the defendant should be required to receive his competency treatment and/or training in jail.
In its written order, the trial court specified that the defendant’s incompetency was “not because of retardation or mental incapacity but rather because of being grossly illiterate and being unable to understand abstract concepts such as the judicial system.” The trial court also found that because the defendant does not meet the criteria for forensic commitment under Chapter 916, the trial court had only two options: (1) civil commitment under the Baker Act (Chapter 394, Part I, Florida Statutes (2011)), or (2) conditional release pursuant to Florida Rule of Criminal Procedure 3.212(d). Based on the psychologists’ reports, wherein the psychologists found that the defendant is not a danger to himself or others, the trial court found the defendant did not meet the criteria for. civil commitment and, thus, the only option was to conditionally release the defendant under rule 3.212(d).
*1136 Based on the above findings, and over the State’s objection and request for an evidentiary hearing, the trial court released the defendant on his own recognizance and again ordered him to stay away from the victims. Although the trial court noted that the psychologists’ written reports, upon which it heavily relied, did not address what type of treatment was needed to enable the defendant to attain the requisite competency to proceed or how long such treatment would take, the trial court ordered the defendant to enroll in school or a “teaching facility” within thirty days to learn how to read and write in an effort to attain competency to proceed. These non-final appeals followed.
Issue
The State contends that the trial court erred by not conducting an eviden-tiary hearing, as requested, to determine: whether the defendant is competent to proceed; if the defendant is incompetent to proceed, whether he meets the criteria for involuntary commitment; what treatment or training, if any, the defendant needs to attain a level of legal competency to proceed; how long the treatment or training would take; and what facilities are available to provide the necessary treatment or training. Because our review of the psychologists’ reports indicates that much of this information, which must be considered under Chapter 916, is absent from the reports, we conclude the trial court erred by not conducting the requested evidentiary hearing.
Analysis
I. Chapter 916, Florida Statutes (2011)
Chapter 916 of the Florida Statutes— the “Forensic Client Services Act” — addresses the treatment and training of mentally ill, mentally retarded, or autistic criminal felony defendants who have been found incompetent to proceed, §§ 916.10, 916.105, Fla. Stat. (2011), including the involuntary commitment of incompetent defendants. At the time of the psychologists’ evaluations, Chapter 916, utilized the word “retardation,” which was defined as having “the same meaning as in s. 398.063.” § 916.106(15), Fla. Stat. (2011). Section 393.063(32), Florida Statutes (2011), defined “retardation” as follows:
[Significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior that manifests before the age of 18 and can reasonably be expected to continue indefinitely. “Significantly subaverage general intellectual functioning,” for the purpose of this definition, means performance which is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the agency. “Adaptive behavior,” for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community.
However, effective July 1, 2013, the term “mental retardation” was replaced with the term “intellectual disability.” Ch. 13-162, sec. 28, Laws of Fla. (2013). There are no material differences between the definitions of “retardation” set forth in section 393.063(32), Florida Statutes (2011), and “intellectual disability” set forth in section 393.063(21), Florida Statutes (2013). Section 393.063(21), however, further provides:
For purposes of the application of the criminal laws and procedural rules of this state to matters relating to pretrial, trial, sentencing, and any matters relating to the imposition and execution of the death penalty, the terms “intellectual disability” or “intellectually disabled” are interchangeable with and have the *1137 same meaning as the terms “mental retardation” or “retardation” and “mentally retarded” as defined in this section before July 1, 2013.
Part II of Chapter 916 (sections 916.111 to 916.17) addresses forensic services for mentally ill defendants, whereas Part III of Chapter 916 (sections 916.801 to 916.304) addresses forensic services for defendants who are retarded or autistic.
II. The steps to follow when a defendant’s competency is questioned
A. Step One: Is the defendant competent to proceed?
The first step is to determine whether the defendant is competent to proceed. A defendant is incompetent to proceed if he “does not have sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceeding against [him].” § 916.12(1) (pertaining to mentally ill defendants); § 916.3012(1) (pertaining to a “defendant whose suspected mental condition is retardation or autism”); see also Fla. R. Crim. P. 3.211(a)(1) (providing that the “criteria for competence to proceed” is “whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings”). In addressing competency to proceed, irrespective of whether the experts determine that the defendant is mentally ill, retarded, or autistic, the “expert shall ... consider and specifically include in his or her report the defendant’s capacity to”:
(a) Appreciate the charges or allegations against the defendant.
(b) Appreciate the range and nature of possible penalties, if applicable, that may be imposed in the proceedings against the defendant.
(c) Understand the adversarial nature of the legal process.
(d) Disclose to counsel facts pertinent to the proceedings at issue.
(e) Manifest appropriate courtroom behavior.
(f) Testify relevantly.
§ 916.12(3) (relating to mentally ill defendant); § 916.3012(3) (relating to defendants who are retarded or autistic); see also Fla. R. Crim. P. 3.211(a)(2) (2011) (relying on materially the same factors as set forth in sections 916.12(3) and 916.3012(3)). Further, the expert “shall consider and include in his or her report any other factor deemed relevant by the expert.” § 916.12(3) (relating to mentally ill defendants); § 916.3012(3) (relating to defendants who are retarded or autistic).
In the instant case, all three psychologists who examined the defendant concluded that he was not competent to proceed based on these criteria.
B. Step Two: Does the defendant meet the criteria for involuntary commitment?
If the evaluating expert concludes that the defendant is not competent to proceed, he or she must then determine whether the defendant meets the criteria for involuntary commitment. To meet the criteria for involuntary commitment, Chapter 916 provides that the defendant must suffer from a mental illness, retardation (now referred to as intellectual disability), or autism. See § 916.13(l)(a) (providing for involuntary commitment based on clear and convincing evidence that the defendant has a mental illness); § 916.302(l)(a) (providing for involuntary commitment based on clear and convincing evidence that the defendant suffers from retardation (an in *1138 tellectual disability), or autism). Thus, if the evaluating expert concludes that the defendant is incompetent to proceed, he or she must determine the basis for the defendant’s incompetency. If the basis for the defendant’s incompetency is mental illness, retardation (an intellectual disability), or autism, then involuntary commitment may be considered if the defendant meets the other criteria for involuntary commitment.
Although the criteria for involuntary commitment differs slightly based on whether the incompetency is due to retardation (an intellectual disability), autism, or a mental illness, the criteria for each requires that the trial court find by clear and convincing evidence that:
There is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;
All available less restrictive alternatives, including services provided in community residential facilities or other community settings, which would offer an opportunity for improvement of the condition have been judged to be inappropriate; and
There is a substantial probability that the mental illnessf, retardation (intellectual disability), or autism] causing the defendant’s incompetence will respond to treatment [or training] and the defendant will regain competency to proceed in the reasonably foreseeable future.
§ 916.13(1)(a)(2), (b)-(c) (setting forth the criteria for involuntary commitment of a defendant determined to be incompetent to proceed due to mental illness); § 916.302(l)(b)-(d) (setting forth the criteria for involuntary commitment of a defendant determined to be incompetent to proceed due to retardation (an intellectual disability) or autism).[3]
To assist the trial court in determining whether an incompetent defendant meets the criteria for involuntary commitment and deciding what treatment or training is appropriate, Chapter 916 specifies that if the examining expert concludes that the defendant is incompetent to proceed due to a mental illness, retardation (intellectual disability), or autism:
(4).... [T]he examining expert[s] shall specifically report on:
(a) The mental illness[, retardation, or autism] causing the incompetence;
(b) The treatment or treatments appropriate for the mental illness [or the training appropriate for the retardation or autism] of the defendant and an explanation of each of the possible treatment [or training] alternatives in order of choices;
(c) The availability of acceptable treatment [or training] and, if treatment [or training] is available in the community, the expert shall so state in the report; and
*1139 (d) The likelihood of the defendant’s attaining competence under the treatment [or training] recommended, an assessment of the probable duration of the treatment [or training] required to restore competence, and the probability that the defendant will attain competence to proceed in the foreseeable future.
§ 916.12(4) (emphasis added); § 916.3012(4) (emphasis added).[4] Thus, Chapter 916 requires accurate and thorough reports before the trial court determines how to handle an incompetent defendant.
III. Applying Chapter 916 to the instant case
All three psychologists who evaluated the defendant properly performed step one and determined that the defendant is incompetent to proceed. They determined that the defendant does not presently have a rational and factual understanding of the proceedings against him. The problem in the instant case is not with the application of step one, but rather with the failure to comply with Chapter 916 at step two of the analysis.
The first evaluation of the defendant was performed by Dr. Fonte at the request of defense counsel. Dr. Fonte concluded that the defendant was not competent to proceed, but that his incompetency was not due to a mental illness. Rather, Dr. Fonte opined that the defendant “likely functions at a borderline intellectual level.” Based on Dr. Fonte’s finding that the defendant was incompetent to proceed, the trial court appointed Drs. Marban and DeFeo, specifically directing them to determine whether the defendant met the criteria of incompetence to proceed under section 916.12, which only relates to mental illness. Thus, Dr. Marban and Dr. DeFeo were directed to determine whether the defendant was incompetent to proceed only due to a mental illness, not whether he was incompetent to proceed for any reason, and if so, what the basis for his incompetence to proceed was— mental illness, retardation (intellectual disability), autism, or for some other reason.
The trial court’s order specifically directed the psychologists to determine whether the defendant was competent to proceed, and if not, whether his incompetence was due to a mental illness. Consequently, when the psychologists concluded that the defendant was incompetent to proceed, but that his incompetence was due to “intellectual deficits” rather than a mental illness, they did not perform any standardized intelligence tests on the defendant to ascertain the nature or extent of his “intellectual deficits” or whether the defendant met the statutory definition of retardation. This was error, as step two requires that if the examining expert concludes that the defendant is incompetent to proceed either due to a mental illness or an intellectual disability, his or her report shall identify the mental illness or intellectual disability that is causing the incompetence; recommend the treatment or training needed; address and opine on the likelihood that, with the recommended treatment or training, the defendant will attain competency in the foreseeable future.
Further testing was especially crucial in this case because Dr. Fonte found that the defendant appeared to be cognitively and *1140 intellectually limited and that he likely functions at a borderline intellectual level Although Dr. Marban did not test the defendant, she stated that she believed he likely suffers from mental retardation as well as a developmental disorder. Dr. De-Feo provided a provisional diagnosis of “adjustment disorder” and borderline intellectual functioning. Thus, appropriate testing and an evidentiary hearing were needed to determine if the defendant meets the definition of retardation (an intellectual disability) and potentially qualifies for involuntary commitment.
Although the trial court recognized that the psychologists’ reports did not specify what type of treatment or training was required or how long it would take for the defendant to attain competency to proceed, it declined to hold an evidentiary hearing as the State requested, and instead fashioned its own treatment and training plan for the defendant. Specifically, the trial court ordered that the defendant enroll in reading and writing classes. This was error.
Although the psychologists’ reports note that the defendant does not read or write, there is absolutely no indication in the reports whether the defendant is capable of learning how to read and write, or whether he would be competent to proceed even if he learns to do so. More importantly, a criminal defendant’s inability to read and write does not, standing alone, render him incompetent to proceed. Rather, a defendant is incompetent to proceed only if he does not have the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceedings against him. § 916.12(1); Fla. R. Crim. P. 3.211(a)(1).
Many defendants who are incapable of reading and writing are still able to confer with counsel and understand the proceedings. Therefore, literacy is generally of little relevance to a competency determination. Rather, the relevant question in the instant case is whether the defendant, with his intellectual, cognitive, and educational deficiencies, is likely to attain competency from treatment or training that focuses on explaining the charges against him, the possible penalties that may be imposed, and the adversarial nature of the legal process. Because the psychologists’ reports do not address this issue, the trial court erred by denying the State’s request for an evidentiary hearing.
We also note that the trial court determined, based solely on the psychologists’ reports, that the defendant does not meet the criteria for involuntary commitment because he is not a danger to himself or others. However, because there was never a hearing, the State was unable to challenge the psychologists’ determination that the defendant was not a danger to others although he was charged with the aggravated stalking of minors, and after being granted pretrial release and ordered to stay away from the minor victims, he allegedly committed two additional offenses of aggravated stalking as to the same minor victims on separate days.
Because no evidentiary hearing was conducted and, as the trial court recognized, the psychologists’ reports failed to address issues such as what type of treatment and/or training would enable the defendant to attain competency, the trial court had insufficient information to determine whether the defendant actually is incompetent to proceed; if he is incompetent to proceed, what is the nature or basis for his incompetence; and whether he meets the criteria for involuntary commitment. We, therefore, reverse the orders under review and remand for further evaluations of the defendant and the submission of reports *1141 that comply with the current version of Chapter 916 of the Florida Statutes, specifically, sections 916.12(4) and 916.3012(4). The trial court is additionally directed to conduct an evidentiary hearing in conformity with Florida Rule of Criminal Procedure 3.212 as the State requested.
IV. Application of rule 3.212
Although we are reversing and remanding, we address the defendant’s contention, and the trial court’s finding, that the defendant must be released if he is incompetent to proceed but does not meet the criteria for involuntary commitment under Chapter 916 based on the United States Supreme Court’s decision in Jackson. The issue in Jackson was the constitutionality of Indiana’s statutory scheme for pretrial commitment of incompetent defendants, which permitted involuntary commitment until such time as the Department of Mental Health certified there was evidence that Jackson, who was identified as a “mentally defective deaf mute with a mental level of a pre-school child,” was competent. Jackson, 406 U.S. at 717-19, 92 S.Ct. 1845. Under that statutory scheme, Jackson’s involuntary commitment could potentially constitute a life sentence. The Jackson Court found that such an indefinite commitment of a criminal defendant based solely on his incompetence to stand trial violated the Fourteenth Amendment’s guarantee of due process. Thus, the Court held that where a person is charged with a criminal offense and is committed solely due to his incompetency to proceed to trial, he cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain the requisite capacity in the foreseeable future. Id. at 738-39, 92 S.Ct. 1845. If not, the State must either institute civil commitment proceedings or release the defendant under those circumstances. Jackson does not support the blanket proposition that a criminal defendant must be released if he does not meet the criteria for involuntary commitment.
In the instant case, the trial court found the defendant did not meet the criteria for pretrial involuntary commitment. Thus, Chapter 916, which pertains to commitment, does not control. Rather, Florida Rule of Criminal Procedure 3.212 controls. Rule 3.212(c) provides, in pertinent part, that:
If the court finds the defendant is incompetent to proceed, or that the defendant is competent to proceed but that the defendant’s competence depends on the continuation of appropriate treatment for a mental illness or intellectual disability, the court shall consider issues relating to treatment necessary to restore or maintain the defendant’s competence to proceed.
(1) The court may order the defendant to undergo treatment if the court finds that the defendant is mentally ill or intellectually disabled and is in need of treatment and that treatment appropriate for the defendant’s condition is available. If the court finds that the defendant may be treated in the community on bail or other release conditions, the court may make acceptance of reasonable medical treatment a condition of continuing bail or other release conditions.
(2) If the defendant is incarcerated, the court may order treatment to be administered at the custodial facility or may order the defendant transferred to another facility for treatment or may commit the defendant as provided in subdivision (3).
Thus, contrary to the trial court’s finding that it only had two options pursuant to *1142 rule 3.212, it had four available options.[5] Specifically, the trial court may have: (1) released the defendant on bail or other release conditions to be treated in the community, see Fla. R. Crim. P. 3.212(c)(1); (2) ordered the defendant to receive treatment at his current custodial facility, as he was incarcerated due to his violation of the initial pre-trial release conditions, see Fla. R. Crim. P. 3.212(c)(2); (3) ordered the defendant to receive treatment at a different custodial facility, as he was already incarcerated, see Fla. R. Crim. P. 3.212(c)(2); or (4) involuntarily committed the defendant if he met the statutory criteria in Chapter 916, see Fla. R. Crim. P. 3.212(c)(3).
The Fourth District Court of Appeal reached the same conclusion in Graham. In Graham, the defendant was a deaf mute with low intellect, but who was neither mentally ill nor retarded under the statutory definitions. Thus, Graham did not meet the statutory requirement for involuntary commitment. The Fourth District Court of Appeal specifically noted that although Graham could not be involuntarily committed, rule 3.212 provides other options.
However, Florida Rule of Criminal Procedure 3.212 provides other options. Rule 3.212(c)(2) states that if an incompetent defendant is incarcerated, “the court may order treatment to be administered at the custodial facility.” This means that an incompetent defendant who satisfies the requirements for pretrial detention may be treated at the facility where he is being held prior to trial. Rule 3.212(d) allows a court to order appropriate release conditions for up to a year, including outpatient treatment at an appropriate local facility and reporting for further evaluation, if a defendant is not mentally competent but does not meet the criteria for commitment.
Graham, 837 So.2d at 559.[6]
Florida’s pretrial treatment of incompetent defendants does not run afoul of Jackson because such defendants, whether or not they are committed, never run the risk of indefinite custodial restraint based solely on their incompetency. A defendant who is involuntarily committed for treatment to enable him to obtain competency to proceed must meet the statutory requirements: there must be a substantial probability that the mental illness or retardation (intellectual disability) that is causing his incompetence will respond to treatment or training and the defendant will become competent to proceed in the reasonably foreseeable future; the appropriate treatment or training must be available; and there must be no less restrictive alternative available. Fla. R. Crim. P. 3.212(c)(3). If a mentally ill defendant charged with a felony does not attain competency in five years and there is not a substantial probability that he will become competent to proceed in the foreseeable future, the charges against him must be dismissed without prejudice to the State to refile should, the defendant be declared competent in the future, and the defendant must either be civilly committed or released. See Fla. R. Crim. P. 3.213(a)(1). On the other hand,
[i]f the incompetency to stand trial or to proceed is due to retardation [intellectual disability] or autism, the court shall dismiss the charges within a reasonable *1143 time after such determination, not to exceed 2 years for felony charges ..., unless the court specifies in its order the reasons for believing that the defendant will become competent within the foreseeable future and specifies the time within which the defendant is expected to become competent. The dismissal shall be without prejudice to the state to refile should the defendant be declared competent to proceed in the future.
Fla. R. Crim. P. 3.213(a)(2). Because Florida’s rules concerning incompetent defendants do not allow for indefinite detention and provide the requisite constitutional safeguards, a trial court may exercise any of the options in rule 3.212 under appropriate circumstances.
Conclusion
Because the State requested and should have been granted an evidentiary hearing, we reverse the orders under review and remand for an evidentiary hearing. Prior to the hearing, the trial court must order that the evaluating experts perform the appropriate testing and/or evaluation of the defendant to determine the nature and extent of the defendant’s intellectual and cognitive deficits and, if it is determined that he does not suffer from a mental illness, they must determine whether the defendant meets the definition of “intellectual disability” or autism under section 393.063, Florida Statutes (2013). Additionally, the experts’ reports or their testimony at an evidentiary hearing must address the following:
1) If the defendant meets the definition of intellectual disability, whether he otherwise satisfies the remaining criteria for involuntary pretrial commitment, including whether there is a substantial likelihood that in the near future he will inflict serious bodily harm on himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;[7] the availability of less restrictive appropriate alternatives; and the substantial probability that the defendant will respond to the treatment or training ordered and attain competency to proceed in the reasonably foreseeable future.
2) If the defendant does not meet the criteria for pretrial involuntary commitment, what type of treatment or training is being recommended to enable the defendant to attain competency; how long such treatment or training would take; the availability of the appropriate treatment or training in and out of custody; and whether, with the appropriate treatment, the defendant is likely to attain competency in the reasonably foreseeable future.
Based on the trial court’s findings after reviewing these reports, it may commit the defendant or order that he receive treatment or training. As the defendant has been released by the trial court on pretrial release, albeit under the mistaken impression that it was required to do so pursuant to statute, we do not suggest that his pretrial release be revoked unless the defendant fails to submit himself for any further evaluations ordered by the trial court or if he again violates the conditions of his release.
Reversed and remanded with instructions.
WELLS, J., concurs.

. This Court has jurisdiction to review a non-final order finding a criminal defendant incompetent to proceed. See Fla. R. App. P. 9.130(a)(2); Fla. R. App. P. 9.140(c)(1)(H).

. Section 916.106(13), Florida Statutes (2011), provides:
"Mental illness” means an impairment of the emotional processes that exercise conscious control of one's actions, or of the ability to perceive or understand reality, which impairment substantially interferes with a defendant’s ability to meet the ordinary demands of living. For the purposes of this chapter, the term does not apply to defendants with only mental retardation or autism and does not include intoxication or conditions manifested only by antisocial behavior or substance abuse impairment.

. comes from section 916.302 and shows the only differences between the relevant portions of sections 916.13 and 916.302. Section 916.13 discusses "mental illness” and "treatment,” while section 916.302 utilizes the terms "retardation or autism” and "training.” Section 916.13 also allows the trial court to commit a mentally ill defendant, even if he is not an immediate danger to himself or others, if:
The defendant is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, the defendant is likely to suffer from neglect or refuse to care for herself or himself and such neglect or refusal poses a real and present threat of substantial harm to the defendant’s well-being[J
Section 916.13(l)(a)l.

. The bracketed language reflects the differences between section 916.12(4) regarding treatment for mental illnesses and section 916.3012 regarding training for retardation (intellectual disability) or autism. All other language is identical between the two statutes, so the substance of the experts' reports should be similar under a finding of mental illness, retardation (intellectual disability), or autism.

.‘ We specifically address the applicability of rule 3.212 based on the trial court’s finding that it had only two options.

. Graham was decided prior to the recent 2013 amendment to rule 3.212. As such, the subsection citations in Graham do not match the current rule, but the substance remains the same.

. The record reflects that after the defendant was released and ordered to have no contact with the minors he allegedly stalked, he allegedly committed two additional incidents of aggravated stalking upon the same minors.