DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**J.J.J.,**
Appellant,

v.

**D.G.** and **A.G.,**
Appellees.

No. 4D2023-2185

[July 24, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas R. Lopane, Judge; L.T. Case No. MHC23-2347.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

No appearance for appellees.

GERBER, J.

The respondent in a Marchman Act proceeding appeals from the circuit court's order requiring the respondent to immediately enter a substance abuse treatment facility for a thirty-day period. The respondent argues the circuit court abandoned judicial neutrality at the Marchman Act hearing when, after the pro se petitioners had rested without having called as a witness the mental health counselor who had executed the involuntary services certificate, the circuit court sua sponte directed the mental health counselor to testify regarding the assessment.

We find no error in the circuit court's action. The plain language of sections 397.6957(1) and (3), Florida Statutes (2023), respectively requires that, at a Marchman Act hearing, "the court _shall_ hear and review all relevant evidence, _including the review of results of the assessment completed by the qualified professional,_" and "[o]ne of the qualified professionals who executed the involuntary services certificate _must be a witness._" § 397.6957(1), (3), Fla. Stat. (2023) (emphases added). Therefore, we affirm the circuit court's order.

## *Procedural History*

The pro se petitioners—who are the respondent's parents—filed a Marchman Act petition for involuntary assessment of the respondent, pursuant to section 397.6814, Florida Statutes (2023). The circuit court entered an ex parte order for involuntary assessment, and an order appointing counsel for the respondent.

A mental health counselor and a social worker issued the assessment report, which later was filed with the circuit court. The report pertinently recommended the respondent should be involuntarily admitted into a substance abuse treatment center, and opined that "failure to engage in further treatment would result in risk of harm to [the respondent] and others."

After the assessment occurred, the pro se petitioners filed a petition for involuntary services and treatment pursuant to section 397.6951, Florida Statutes (2023). The circuit court then issued an order setting a Marchman Act hearing by Zoom.

At the hearing, the pro se petitioners and the respondent's appointed counsel appeared. The respondent and the social worker appeared from the assessment facility. The mental health counselor initially did not appear from the assessment facility.

The petitioners testified about the respondent's drug use and its psychological effects on the respondent. The petitioners also testified the respondent had ignored a recovery center's recommendation to be admitted for inpatient treatment, and had instead chosen to live "on the streets," where he had become subject to violence. After the petitioners testified, they rested their case without calling any other witnesses.

The respondent's counsel then moved for a judgment of dismissal, arguing the petitioners had failed to "present[] any evidence of the assessment, which is a prerequisite … in a services hearing" and, more specifically, had failed to comply with section 397.6957(3), Florida Statutes (2023), which provides: "One of the qualified professionals who executed the involuntary services certificate must be a witness." § 397.6957(3), Fla. Stat. (2023).

The respondent's counsel then cited two recent Fifth District cases for the proposition that the petitioners, despite being pro se, still had the burden to call as a witness one of the qualified professionals who had executed the involuntary services certificate:

[In *J.W. v. R.W.*, 351 So. 3d 1243 (Fla. 5th DCA 2022),] the [Fifth] DCA [held] … the trial court erred by granting the petition without hearing testimony from a qualified professional who executed the involuntary assessment pursuant to [section 397.6957(3)]. … [A] licensed mental health counselor who assessed the respondent … wrote something that contained her findings and … recommendations, much like we have in the assessment here. And the petitioner never called [that qualified professional] as a witness, … therefore, the trial court erred in … granting the petition.

[In the instant case, the] pro se petitioners … may not be familiar with the law and the rules, and the procedures; however, … they step into the shoes of an attorney and are not relieved of the same obligations that any attorney would have.

[In] another case that came out … last year, *R.S. v. C.P.T.*, 333 So. 3d 1190 [(Fla. 5th DCA 2022),] … the trial court called … as a witness for the[] [petitioner], … the assessor, the clinician, and was questioning her and laying foundation and things of that nature, and the [appellate] court basically said the [trial] court can't present the petitioner's case for them.

So at this point [here], the Court's asked the [p]etitioners if they have anything further to present. They've said no. I don't believe they've met their burden by clear and convincing evidence since … the testimony of the person who did the assessment is required.

The circuit court then asked the petitioners if they understood what the respondent's counsel had just said, and the following discussion occurred:

COURT: [Petitioners], did you understand what … [the respondent's counsel] just said?

MOTHER: No.

STEPFATHER: Not really. But I thought [the] assessment would be coming from the [facility] that [the respondent is] … staying at and they would decide on what's going on with him, and how to help him.

3

COURT: Okay. So did you have any contact with [the mental health counselor or the social worker] who signed the petition for involuntary services?

…

MOTHER: Yes.

STEPFATHER: Yes. They were … there on the phone [yesterday] talking about all of this. So I don't know why no one turned up today.

…

COURT: … I don't know that they've gotten notice of this hearing today. Some people did, some people didn't.

…

RESPONDENT'S COUNSEL: … Yes, Judge. We … did set this and coordinated with [the social worker], who is present with the respondent. … I don't know if the petitioners … want to inquire further, but [the social worker] is on Zoom.

COURT: Okay. [Social worker], are you there? … Who was the [person who performed the] … clinical assessment[?] … [Looking at the assessment.] [H]ere it is. … [The mental health counselor] and [the social worker]. Okay.

SOCIAL WORKER: I wasn't sure [the mental health counselor] was needed. So I can give her a call to come down if need be.

…

COURT: … I need the person who wrote … this clinical assessment … to testify to it. … I need to have [the mental health counselor] on the stand to find out –

RESPONDENT'S COUNSEL (speaking to the social worker): I think [the mental health counselor is] in the [assessment facility] … ?

SOCIAL WORKER: Yeah. I can call her down.

4

...

COURT: ... Call [the mental health counselor] down now.

SOCIAL WORKER: Okay.

COURT: Okay. We'll take a five-minute recess.

After the recess, with the mental health counselor present and sworn as a witness, the circuit court proceeded to question the mental health counselor about her report and recommendations:

COURT: [C]an you please explain to me your report? Because it ... just ends at a mental review of intake and admission report, and ... doesn't say the recommendation, but at the top of the report page 3, it has something there. Can you go ahead and explain ... what ... you [have] done to talk to or assess [the respondent]? What steps did you take?

RESPONDENT'S COUNSEL: ... Judge, again, I would object to the Court assisting the petitioner presenting their case pursuant to ... *R.S. v. C.P.T.* ....

COURT: Okay. [Your objection is] noted for the record.

The mental health counselor proceeded to testify that the respondent initially had agreed to enter inpatient treatment, but then changed his mind. The mental health counselor also testified the respondent's "insight as to his substance use and living on the street is very poor. I don't think that he understands that it's dangerous for him and he does have support from family; however[,] he's still refusing to go into treatment."

The circuit court then asked: "So what are you recommending for [the respondent]?" The mental health counselor testified she recommended the respondent be involuntarily committed to a thirty-day inpatient treatment program.

At that point, the circuit court asked if anyone else wanted to question the mental health counselor. The petitioners did not do so. The respondent's counsel briefly voir dired the mental health counselor as to her qualifications.

The circuit court permitted the parties to make closing arguments. The petitioners argued they "can't cope with dealing with this stuff," and told the circuit court "if [the respondent will] only just try the 30 days, try it. You know, we would really, really appreciate that if [the respondent] was go in for 30 days."

The respondent's counsel then argued:

> I would, on behalf of my client, ask the Court to deny the petition. I would just renew all my previous motions and objections that I know the Court's ruled upon and the case law that I cited.
>
> My client does not want to go to residential treatment; however[,] he would be open to a lower level of care .... He does not feel that he has an addiction to drugs or a drug problem, and is asking the Court to deny this petition. And I would argue that the [p]etitioners failed to meet their burden by clear and convincing evidence. ...

The circuit court then announced its ruling:

> [I] ... find that the [p]etitioners have met their burden, that ... [the respondent] is in need of substance abuse services and by reason of the substance abuse impairment. His ... judgment has been so impaired that he's incapable of appreciating his need for such services or making a rational decision in that regard, that without care or treatment, he's likely to suffer from neglect. I find that the [p]etitioners' testimony was credible and that ... without treatment, [the respondent is] going to suffer from neglect or is unable to care for himself or refuse care for himself, and that ... such neglect or refusal poses a real and present threat of substantial harm to his well-being and that it's apparent that the harm may be avoided through the help of ... the provision of services. So I'm going to ... order 30 days [of in-patient treatment].

The circuit court later entered a written order, pertinently finding:

> 1. Both the petitioners ... and [the mental health counselor] testified as to the current threats posed to the [respondent] by his current use of illegal substances and his emotional/psychological state including but not limited to being homeless and engaging in activities that have caused

6

serious physical harm and injuries to himself, [and] this Court finds that testimony to be credible. This Court also finds that [the respondent] is in need of substance abuse services, and by reason of his impairment, his judgment has been so impaired that he is incapable of appreciating his need for such services and of making a rational decision in that regard.

2. This Court also finds that without care or treatment, [the respondent] is likely to suffer from neglect or refuse to care for himself; that such neglect or refusal poses a real and present threat of substantial harm to his well[-]being, and that it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of less restrictive services and that based on the testimony there is a substantial likelihood that [the respondent] has inflicted or threatened to ... or attempted to inflict [sic] or unless admitted is likely to inflict physical harm on himself or another.

3. Therefore, this Court orders ... [the respondent] to enter [a certain in-patient treatment facility] ... for a minimum of thirty (30) days to begin forthwith.

This appeal followed. The respondent summarizes his argument as follows:

The [circuit court] denied [the respondent's] rights of due process by abandoning judicial neutrality and impartiality during the involuntary services Marchman Act hearing. The [circuit court] called the [mental health counselor] who examined [the respondent] and questioned her about her interactions and recommendations, going beyond mere clarification of issues. The [circuit court's] active participation enabled [the] [p]etitioners to prove the necessary elements for involuntary treatment and relieved the [p]etitioners of their burden of proof for the imposition of such treatment.

The petitioners have not filed an answer brief or otherwise appeared in this appeal.

### *Our Review*

Our review is de novo. *See J.W. v. R.W.*, 351 So. 3d 1243, 1244 (Fla. 5th DCA 2022) ("We review de novo the order for involuntary substance abuse treatment under chapter 397.").

Applying de novo review, we conclude the respondent's argument lacks merit.  Section 397.6957, Florida Statutes (2023), entitled "Hearing on petition for involuntary services," pertinently provides:

(1)  At a hearing on a petition for involuntary services, *the court* **shall** *hear and review all relevant evidence, including the review of results of the assessment completed by the qualified professional* in connection with the respondent's protective custody, emergency admission, involuntary assessment, or alternative involuntary admission.  …

(2)  *The petitioner has the burden of proving by clear and convincing evidence* that:

(a)  The respondent is substance abuse impaired and has a history of lack of compliance with treatment for substance abuse; and

(b)  Because of such impairment the respondent is unlikely to voluntarily participate in the recommended services or is unable to determine for himself or herself whether services are necessary and:

1.  Without services, the respondent is likely to suffer from neglect or refuse to care for himself or herself; that such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and that there is a substantial likelihood that without services the respondent will cause serious bodily harm to himself, herself, or another in the near future, as evidenced by recent behavior; or

2.  The respondent's refusal to voluntarily receive care is based on judgment so impaired by reason of substance abuse that the respondent is incapable of appreciating his or her need for care and of making a rational decision regarding that need for care.

(3)  *One of the qualified professionals who executed the involuntary services certificate* **must** *be a witness.*  …  The testimony in the hearing must be under oath, and the proceedings must be recorded.  …

8

(4)  At the conclusion of the hearing the court shall dismiss the petition or order the respondent to receive involuntary services from his or her chosen licensed service provider if possible and appropriate.

§ 397.6957, Fla. Stat. (2023) (emphases added).[1]

---

[1] The 2024 Legislature substantially amended section 397.6957 effective July 1, 2024, and thus the amendments do not apply here.  However, for informational purposes, we note the amendments to sections 397.6957(1) and (3):

> (1)(a) The respondent must be present ~~A~~at a hearing on a petition for involuntary treatment services, unless the court finds that he or she knowingly, intelligently, and voluntarily waives his or her right to be present or, upon receiving proof of service and evaluating the circumstances of the case, that his or her presence is inconsistent with his or her best interests or is likely to be injurious to self or others.  ~~t~~The court shall hear and review all relevant evidence, including testimony from individuals such as family members familiar with the respondent's prior history and how it relates to his or her current condition, and the ~~review of~~ results of the assessment completed by the qualified professional in connection with this chapter.  The court may also order drug tests.  Witnesses may remotely attend and, as appropriate, testify at the hearing under oath via audio-video telecommunications technology.  A witness intending to remotely attend and testify must provide the parties with all relevant documents by the close of business on the day before the hearing. ~~the respondent's protective custody, emergency admission, involuntary assessment, or alternative involuntary admission. The respondent must be present unless the court finds that his or her presence is likely to be injurious to himself or herself or others, in which event the court must appoint a guardian advocate to act in behalf of the respondent throughout the proceedings~~.
>
> …
>
> (3) ~~One of the qualified professionals who executed the involuntary services certificate must be a witness.  The court shall allow testimony from individuals, including family members, deemed by the court to be relevant under state law, regarding the respondent's prior history and how that prior history relates to the person's current condition.  The~~ Testimony in the hearing must be taken under oath, and the proceedings must be recorded.  The respondent ~~patient~~ may refuse to testify at the hearing.

2024 Fla. Sess. Law Serv. Ch. 2024–245 (C.S.C.S.H.B. 7021).

As can be seen above, although the plain language of section 397.6957(2), Florida Statutes (2023), places the burden on petitioners to prove by clear and convincing evidence the criteria for a Marchman Act involuntary commitment, the plain language of sections 397.6957(1) and (3), Florida Statutes (2023), nevertheless *requires* that one of the qualified professionals who executed the involuntary services certificate must testify regarding the assessment. As we stated in *Graham v. Jenne*, 837 So. 2d 554 (Fla. 4th DCA 2003):

> [It is a] well-established principle that statutes are to be read in their entirety. *See Burdick v. State*, 594 So. 2d 267 (Fla. 1992). "A basic principle of statutory construction requires that 'all parts of a statute must be read *together* in order to achieve a consistent whole. Where possible, courts must give effect to *all* statutory provisions and construe related statutory provisions in harmony with one another.'" *M.W. v. Davis*, 756 So. 2d 90, 101 (Fla. 2000) (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992)) (emphasis in original). Additionally, "[s]tatutes which authorize the deprivation of an individual's liberty must be strictly construed." *Lee v. State*, 546 So. 2d 436, 437 (Fla. 5th DCA 1989).

*Id.* at 558–59. Thus, after the pro se petitioners had rested without having called as a witness the mental health counselor who had executed the involuntary services certificate, the circuit court did not err in sua sponte directing the mental health counselor to testify regarding the assessment, *as required by the plain language of sections 397.6957(1) and (3)*.

Our decision is not inconsistent with the Fifth District's decision in *J.W. v. R.W.*, 351 So. 3d 1243 (Fla. 5th DCA 2022). There, a mental health counselor was the qualified professional who had conducted the assessment and had executed the certificate containing her findings and recommending involuntary treatment. *Id.* at 1244. However, contrary to sections 397.6957(1) and (3), the mental health counselor *did not* testify at the Marchman Act hearing, and the mental health counselor's assessment *was not* admitted into evidence at the hearing. *Id.* For those reasons, the Fifth District reversed the trial court's order for involuntary treatment and remanded for a new hearing. *Id.*

As in *J.W.*, if the mental health counselor in the instant case had not appeared at the Marchman Act hearing to testify regarding the assessment, then we likewise would have reversed the circuit court's

10

involuntary treatment order and remanded for a new hearing. But that is not what occurred in the instant case. Here, regardless of the pro se petitioners' lack of knowledge to have the mental health counselor testify regarding the assessment, the circuit court complied with sections 397.6957(1) and (3) by directing the mental health counselor to testify regarding the assessment at the Marchman Act hearing.

Our only quarrel with the Fifth District's decision in *J.W.* is the sentence which paraphrases section 397.6957(3) as stating that "*a petitioner* must present witness testimony, under oath, from 'one of the qualified professionals who executed the involuntary services certificate.'" *Id.* (emphases added). Our quarrel with that statement is that section 397.6957(3) does not provide that "a petitioner" must present such witness testimony. Rather, section 397.6957(3) provides: "One of the qualified professionals who executed the involuntary services certificate *must be a witness*." (emphases added). While ordinarily "a petitioner" might be the party which would present such a witness, nothing in section 397.6957(3) requires "a petitioner" to present such a witness. Thus, here, after the pro se petitioners had rested without having called as a witness the mental health counselor who had executed the involuntary services certificate, the circuit court appropriately directed the mental health counselor to testify regarding the assessment, *as required by sections 397.6957(1) and (3)*.

Our decision also is distinguishable from the Fifth District's decision in *R.S. v. C.P.T.*, 333 So. 3d 1190 (Fla. 5th DCA 2022). In *R.S.*, as described by the Fifth District:

> [T]he trial judge assisted [the petitioner], who appeared pro se, in the presentation of her case in numerous ways. Of relevance, the trial judge: called the clinician who evaluated [the respondent] to testify; questioned the clinician about her findings; and laid the evidentiary foundation for the assessment and ultimately admitted the same document into evidence. Notably, [the petitioner] did not question the clinician during the hearing, she did not lay the foundation for the admission of the assessment into evidence, and she did not attempt to enter the assessment into evidence. Rather, only the trial judge and [the respondent's] attorney questioned the clinician and the trial judge entered the assessment into evidence. During the proceedings, [the respondent's] attorney consistently objected to the trial judge assisting [the petitioner] in the presentation of her case.

We find that the trial judge departed from his role as a neutral arbiter by assisting [the petitioner] in the presentation of her case and by actively participating in the hearing. It is particularly important that *the trial judge laid the foundation for the admission of the assessment into evidence* and questioned the clinician about her findings because that evidence was key to proving [the petitioner's] case—i.e., that [the respondent] is substance abuse impaired with a history of a lack of compliance with treatment and that he is unlikely to voluntarily participate in the recommended services. *The effect of the trial judge's actions was to relieve [the petitioner] of her burden of proof and to help her prove the essential elements of the case.* Therefore, the trial judge's actions deprived [the respondent] of a fair hearing. Accordingly, we reverse and remand for a new hearing.

*Id.* at 1191-92 (emphases added; internal citations omitted).

We do not have the benefit of the hearing transcript in *R.S.* to know what the trial judge there exactly said or did to warrant the Fifth District's reversal. In the instant case, however, the hearing transcript—which we have quoted in detail above—does not reflect that the circuit court "departed from its role as a neutral arbiter" by "assisting the petitioners in the presentation of their case," "actively participating in the hearing," or "relieving the petitioners of their burden of proof and to help her prove the essential elements of the case." Rather, here, the petitioners both testified about the respondent's activities leading to their petition—without the circuit court's assistance or active participation—to prove much of section 397.6957(2)'s criteria by clear and convincing evidence. Only after the petitioners had rested without having called as a witness the mental health counselor who had executed the involuntary services certificate, the circuit court appropriately directed the mental health counselor to testify regarding the assessment, *as required by sections 397.6957(1) and (3)*. And as reflected in the hearing transcript, the circuit court merely asked the mental health counselor: "Can you go ahead and explain … what … you [have] done to talk to or assess [the respondent]? What steps did you take?" and "[W]hat are you recommending for [the respondent]?" We do not consider these fundamental questions as having relieved the petitioners of their burden to prove all of section 397.6957(2)'s criteria by clear and convincing evidence.

Lastly, our decision also is distinguishable from the Fifth District's recent decision *C.W.R.K. v. Stewart Marchman Act Behavioral Healthcare,*

12

2024 WL 2952822 (Fla. 5th DCA June 12, 2024). In *C.W.R.K.*, as described by the Fifth District:

> A hearing on [the petition for involuntary treatment] was held over two days. At the end of the first day of the hearing, Appellant's counsel argued that there was no testimony from a qualified professional who executed the involuntary services certificate as section 397.6957(3) requires. Without a request from the petitioner, and over Appellant's objection, the trial court continued the hearing so the qualified professional could appear and testify.

> On the second day of the hearing, the petitioner was not present, but the health care professional who executed the involuntary services certificate appeared as a witness. The trial court began a colloquy with the health care professional and asked various questions going to the heart of the issues raised in the petition. The health care professional indicated that mandating follow-through with treatment was necessary. Appellant's counsel objected on the basis that the petitioner was not present, and it was the petitioner's burden to present the case. The court overruled the objection and granted the petition.

> ...

> The circumstances of this case are strikingly similar to *J.C.* [*v. State*, 293 So. 3d 627 (Fla. 5th DCA 2020),] where we reversed the order for involuntary substance abuse treatment explaining: "At the hearing in question, the trial court called the sole witness and examined him, thereby developing the testimony on which it would rely in granting the petition for involuntary treatment. In doing so, the court failed to follow the applicable statute by essentially functioning as the absent petitioner." 293 So. 3d at 628. Here, the trial court continued the hearing to allow the health care professional, a statutorily required witness, to testify. In the absence of the petitioner on the second day of the hearing, the court called and examined the health care professional to develop the testimony on which it would rely in granting the petition.

> [Thus, t]he trial court failed to follow the governing statute when, in the absence of the petitioner, it called and questioned the health care professional who executed the involuntary

13

services certificate.  Accordingly, we reverse and remand for a new hearing.  *See R.S. v. C.P.T.*, 333 So. 3d 1190, 1192 (Fla. 5th DCA 2022) (remanding for new hearing where appellant was deprived of fair hearing).

*Id.* at *1-2 (headings and footnote omitted).

Unlike in *C.W.R.K.*, the pro se petitioners in the instant case were present during the entire Marchman Act hearing, testified as witnesses on their own behalf, and presented a closing argument in support of their petition.  While the circuit court here called and examined the mental health counselor in the middle of the hearing after the petitioners had not done so, the mental health counselor's testimony was not the only testimony upon which the circuit court relied in granting the petition.  Thus, in the instant case, the circuit court did not "fail[] to follow the governing statute."  *Id.* at *2.  On the contrary, the circuit court in the instant case followed the requirements of sections 397.6957(1) and (3) by directing the mental health counselor to testify regarding the assessment.

### *Conclusion*

Based on the foregoing, we affirm the circuit court's order requiring the respondent to immediately enter a substance abuse treatment facility for a thirty-day period.  We find no error in the circuit court having sua sponte directed the mental health counselor to testify, because the plain language of sections 397.6957(1) and (3), Florida Statutes (2023), requires that, at a Marchman Act hearing, one of the qualified professionals who executed the involuntary services certificate must testify as a witness regarding the assessment.  Lastly, to the extent our opinion conflicts with *R.S.*, *J.W.*, or *C.W.R.K.*, or with the statement in *J.W.* that "*a petitioner* must present witness testimony, under oath, from 'one of the qualified professionals who executed the involuntary services certificate' under section 397.6957(3)," we certify conflict with *R.S.*, *J.W.*, and *C.W.R.K.*, for the reasons stated above.

*Affirmed; conflict certified.*[2]

---

[2] As our colleague's dissent aptly points out, the 2024 amendments to section 397.6957(1) and (3) may preclude the instant issue from arising again.  Thus, the practical necessity of resolving the certified conflict may be lessened.  Nevertheless, to the extent our conflict with the Fifth District at least affects the ward in the instant case, we have certified conflict to permit the guardian to have the opportunity to pursue any further appellate consideration.

KUNTZ, J., concurs.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

I dissent, because the trial court departed from a position of neutrality in denying the motion for dismissal and calling the clinician as a witness, examining the clinician, and relying on that testimony in granting the petition. I do not agree that the court had an independent obligation to call the clinician as a witness. The statute places the burden on the petitioner to prove its case by clear and convincing evidence. *See* § 397.6957(2), Fla. Stat. (2023); *see also*, *J.C. v. State*, 293 So. 3d 627, 628 (Fla. 5th DCA 2020). That one of the witnesses must be a clinician who executed the involuntary services certificate is a direction to the petitioner in presenting its case, not an invitation to the trial court to act for the petitioner to create clear and convincing evidence so that the court might grant the petition, particularly over the objection of the respondent. *See* § 397.6957(3), Fla. Stat. (2023).

The majority opinion, however, has limited impact. The Legislature amended the statute this year to remove the requirement of the clinician witness and other matters. The statute now provides:

> (3) Testimony in the hearing must be taken under oath, and the proceedings must be recorded. The respondent patient may refuse to testify at the hearing.

2024 Fla. Sess. Law Serv. Ch. 2024–245 (C.S.C.S.H.B. 7021). Instead, section 397.8957(1)(b) of the revised statute compels an assessment and the filing of a report prior to a hearing on the petition. *Id.* Thus, this issue will not arise again.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

15