PER CURIAM.
M.H. appeals an order of involuntary commitment under Florida Statutes section 985.223(3). We treat this appeal as a petition for writ of certiorari considering the liberty interest at stake where an individual has been involuntarily committed. See Pullen v. State, 802 So.2d 1113, 1116 (Fla.2001) (“Clearly, an individual who faces involuntary commitment to a mental health facility has a liberty interest at stake.”); Mosher v. State, 876 So.2d 1230 (Fla. 1st DCA 2004) (treating adult involuntary commitment challenge as a petition for writ of certiorari); K.D. v. Dep’t of Juvenile Justice, 694 So.2d 817 (Fla. 4th DCA 1997) (reviewing juvenile involuntary commitment challenge). We grant the petition for writ of certiorari.
M.H. was arrested for battery on a school employee. A petition for delinquency was filed against M.H. alleging battery on a school employee. M.H.’s competency to stand trial was evaluated by two psy *199 chologists. Both psychologists concluded that M.H. was not competent to proceed and diagnosed M.H. with Attention Deficit Hyperactivity Disorder (ADHD), which led to him having a temper and striking family and school community members on a repeated basis. Based on these evaluations, the trial court entered an order of incompetency and referred M.H. to the Department of Children and Families (DCF) for treatment.
The psychologists were subsequently directed to re-evaluate M.H. and determine whether his competency had been restored and whether he met the requirements for involuntary residential competency restoration services. One psychologist concluded that M.H. remained incompetent to proceed and that placement into a residential facility might merit consideration. The other psychologist also concluded that M.H. remained incompetent to proceed, but determined that involuntary hospitalization was not appropriate because M.H. was receiving medication, counseling, and competency restoration services. Both psychologists reported that M.H. continued his violent and aggressive behavior.
The trial court held a hearing on competency and involuntary commitment, at which one of the psychologists testified that M.H. did not suffer from any mental illness. M.H.’s mother, grandfather, competency trainer, and caseworker all testified that they believed involuntary commitment to be in his best interests. The State requested involuntary commitment under Florida Rule of Juvenile Procedure 8.095(a)(4).
We applaud the trial court for his obvious compassion and concern as revealed in the following findings on the record at the hearing:
All right. We’ll proceed to the ruling at this time. All right. Having considered all the evidence and testimony presented in today’s proceedings,. as well as reviewing the actual reports by the doctors, I do believe that the State has carried its burden of proof in terms of an involuntary commitment as requested in their motion.
I think what ultimately swayed me or put me over the top was the testimony of the people that know [M.H.] the most or know him the best. And I can only glean from their concern, and the fact that the two doctors are still here, they genuinely care for him but are kind of at the end of their so-called rope. There’s no other alternative placement or less restrictive treatment alternative, at least from what I’ve heard today and my knowledge of the rather limited alternatives that there are. It’s due to budget cuts or just over a lack 'of alternative placements. So that’s what put me over the threshold was the people that know him the most and have worked with him for a long period of time.
I am familiar with the facility at Apalachicola. In fact, we had a hearing in here, and I go to talk to a young man who was placed there and said it was actually a nice facility. And he said he almost enjoyed being there, short of the fact of how far away it is.
What I would like to do though is set a status so we can see in a few months how [M.H.] is. Once he is admitted, to see how he is adapting and to see how he’s doing. And I can appreciate how far it is, but I think we all have [M.H.’s] best interest at heart.
The trial court entered an order for involuntary hospitalization under Rule 8.095(a)(4). The order was later, vacated and a new order of involuntary commitment entered under section. 985.223(3). M.H. was admitted to the Apalachicola Forest Youth Camp.-
*200 “[T]o obtain a writ of certiorari, there must exist ‘(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal.’” Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812 (Fla.2004). Where competent, substantial evidence does not support the trial court’s finding regarding competency or involuntary commitment, the trial court has departed from the essential requirements of the law. See Dep’t of Children & Families v. C.R.C., 867 So.2d 592 (Fla. 5th DCA 2004); but see K.D., 694 So.2d at 819 (the appellate court’s role is not to reweigh the evidence and the trial court’s ruling will be upheld where any theory or principle of the law supports the trial court’s ruling based on the evidence before it).
Florida Statutes section 985.223(3), under which the order involuntarily committing M.H. was entered, provides:
(3) If the court finds that a child is mentally ill or retarded and adjudicates the child incompetent to proceed, the court must also determine whether the child meets the criteria for secure placement. A child may be placed in a secure facility or program if the court makes a finding by clear and convincing evidence that:
(a) The child is mentally ill and because of the mental illness; or the child is mentally retarded and because of the mental retardation:
1. The child is manifestly incapable of surviving with the help of willing and responsible family or friends, including available alternative services, and without treatment or training the child is likely to either suffer from neglect or refuse to care for self, and such neglect or refusal poses a real and present threat of substantial harm to the child’s well-being; or
2. There is a substantial likelihood that in the near future the child will inflict serious bodily harm on self or others, as evidenced by recent behavior causing, attempting, or threatening such harm; and
(b) All available less restrictive alternatives, including treatment or training in community residential facilities or community settings which would offer an opportunity for improvement of the child’s condition, are inappropriate.
(Emphasis added).
The State contends that Rule 8.095(a)(4) applies and controls. Rule 8.095(a)(4) provides:
(4) Child Found Incompetent to Proceed. If at the hearing provided for in subdivision (a)(2) the child is found to be incompetent to proceed, the child must be adjudicated incompetent to proceed and may be involuntarily committed as provided by law to the Department of Children and Family Services for treatment upon a finding of clear and convincing evidence that:
(A) The child is mentally ill or mentally retarded and because of the mental illness or retardation of the child:
(i) the child is manifestly incapable of surviving with the help of willing and responsible family or friends, including available alternative services, and without treatment the child is likely to either suffer from neglect or refuse to care for himself or herself, and such neglect or refusal poses a real and present threat of substantial harm to the child’s well-being; or
(ii) there is a substantial likelihood that in the near future the child will *201 inflict serious bodily harm on himself or herself or others, as evidenced by recent behavior causing, attempting, or threatening such harm; and
(B) All available less restrictive treatment alternatives, including treatment in community residential facilities or community inpatient settings which would offer an opportunity for improvement of the child’s condition are inappropriate.
(Emphasis added).
M.H. contends that the trial court did not make the factual findings necessary to support each requirement of the statute. For example, the trial court did not find that M.H. has a mental illness or is mentally retarded, the evidence did not support a finding of mental illness or retardation (and, in fact, supported the contrary), and M.H. has only been diagnosed with a developmental disorder. The State contends that a finding of mental illness is not required because Rule 8.095(a)(4) requires either a finding of mental illness or retardation and its effects or a finding on less restrictive alternatives, unlike section 985.223(3).
However, the plain language of both the rule and the statute belie the State’s contention. In both the statute and the rule an “and” is included between the provisions on mental illness or retardation and its effects and least restrictive alternatives, necessitating both requirements to be met. As a result, whether the statute or rule controls, the trial court must make findings to support the following requirements in order to involuntarily commit a juvenile found incompetent to stand trial: (1) the child is mentally ill or retarded; (2) because of the mental illness or retardation, the child is “manifestly incapable of surviving,” etc. or there “is a substantial likelihood that in the near future the child will inflict serious bodily harm on self or others” as evidenced by recent behavior; and (3) the less restrictive alternatives for treatment are inappropriate.
In this case, the trial court made findings only on the third prong regarding less restrictive alternatives, and did not make a finding that M.H. was mentally ill or retarded. Because the trial court did not make findings supporting each requirement for involuntary commitment, the trial court departed from the essential requirements of the law by ordering M.H.’s commitment. M.H.’s petition for writ of cer-tiorari is granted, the trial court’s order on involuntary commitment is quashed, and the case is remanded for further proceedings.
GRANTED.
GUNTHER, STONE and STEVENSON, JJ., concur.