# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-0479
Lower Tribunal Nos. 17-875-A-K & 17-876-A-K

_____

**Department of Children and Families,**
Petitioner,

vs.

**Adalberto Garcia, et al.,**
Respondents.

A Writ of Certiorari to the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Patricia Salman, Assistant Regional Legal Counsel, for petitioner.

Pamela Jo Bondi, Attorney General, and Michael W. Mervine, Assistant Attorney General; Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for respondents.

Before EMAS, FERNANDEZ and LUCK, JJ.

PER CURIAM.

The state department of children and families petitions for a writ of certiorari from the trial court's order involuntarily committing defendant Adalberto Garcia to the department after Garcia was found incompetent to proceed with his pending felony lobster-catching charges. We grant the petition because the trial court exceeded its jurisdiction by requiring the department to involuntarily commit Garcia where there was no evidence of a substantial probability that he would regain competency to proceed in the reasonably foreseeable future, as required for involuntary commitment under Florida Statutes section 916.13(1)(c).

*Factual Background and Procedural History*

On August 2, 2017, a Monroe County sheriff's deputy found the eighty-one year old Garcia walking with a five pound bucket full of Florida spiny lobsters. There were twenty-nine lobsters in the bucket caught out of season, with eight of the lobsters smaller than the minimum allowable size. Garcia was arrested on felony lobster violations and booked in the Monroe County detention center.

While still in custody, the trial court ordered that Garcia be evaluated for competency to stand trial. Dr. Tanju Mishara conducted the competency evaluation on November 20, 2017. Dr. Mishara opined that Garcia was not competent to stand trial because of his impairment "due to cognitive decline into dementia which happens to many seniors his age." Dr. Mishara also believed that while Garcia met the criteria for involuntary commitment, "it [was] quite doubtful

2

that his competency can be restored." "[I]t is likely," Dr. Mishara explained, "that his dementia will progess, and he will experience more cognitive function loss with time." "[G]iven his age, treatment [was] not likely to restore his competence to proceed appreciably." Dr. Mishara recommended that Garcia be placed in a senior assisted living facility where he would be supervised for his self-care needs.

The trial court held a non-testimonial competency hearing on February 26, 2018, where it received Dr. Mishara's written report as evidence. Based on Dr. Mishara's report, the trial court found Garcia incompetent to proceed with the trial in the case. The trial court also found that Garcia met the criteria for commitment to a treatment facility as provided in section 916.13(1), and committed Garcia to the department to be placed in a secure mental health treatment facility. The sheriff was directed, within fifteen days, to transport Garcia to the treatment facility designated by the department.

The department moved for rehearing and reconsideration of the trial court's commitment order. In the rehearing motion, the department highlighted the part of Dr. Mishara's report where she opined that it was doubtful Garcia's competency could be restored. The department also pointed the trial court to the involuntary commitment statute, section 916.13(1), which provides that the defendant may be involuntarily committed only on a finding by clear and convincing evidence that there's a substantial probability he will respond to treatment and will regain

3

competency to proceed in the reasonably foreseeable future. The department cited to a case from the Fifth District Court of Appeal, <u>Department of Children & Families v. Ewell</u>, 949 So. 2d 327 (Fla. 5th DCA 2007), where the appellate court granted the department's certiorari petition after the trial court ordered the defendant involuntarily committed without evidence the defendant could be restored to competency. The trial court denied the rehearing motion on March 12, 2018.

The next day, the department served a petition for writ of certiorari. Like the rehearing motion, the department petitioned to quash the trial court's involuntary commitment order because there was no evidence supporting the trial court's finding that Garcia met the requirement for involuntary commitment that there be a substantial probability he will respond to treatment and regain competency in the near future.

We ordered Garcia and the Attorney General's office to respond to the department's petition. Garcia responded that we should grant the certiorari petition because all competent evidence – i.e., Dr. Mishara's report – indicated that Garcia was not restorable, and therefore, he could not be committed to the state hospital under section 916.13(1). The Attorney General, in her response, agreed:

> DCF asserts that the law prohibits their assuming the care and custody of Mr. Garcia. The cited statute, section 916.13, Florida Statutes, places into DCF's care subjects who have a "substantial probability"

4

of responding to treatment for their mental illness. Dr. Tanju T. Mishara's report suggests that Mr. Garcia does not meet that criterion.

Although DCF is in the best position to assess its responsibilities under the regulations, the above-cited statute appears to supports its current contention. Hence, the State asks that this Court rule accordingly on the question of Mr. Garcia's placement.

*Jurisdiction*

"Certiorari jurisdiction lies to rectify a trial court order to the [d]epartment to assume treatment responsibilities for an individual beyond what is required by statute." Dep't of Children & Families v. C.Z., 201 So. 3d 78, 81 (Fla. 3d DCA 2015). "Certiorari jurisdiction lies to review DCF's claim that the trial court has acted in excess of its jurisdiction by ordering DCF to undertake responsibilities beyond what is required by statute." Dep't of Children & Families v. Amaya, 10 So. 3d 152, 154 (Fla. 4th DCA 2009). Finally, "certiorari does lie where there is irreparable harm if entities such as . . . HRS, and [the county] are required to pay for treatment or transportation of the detainee and there is no adequate remedy on appeal considering the non-party status of these petitioners." State Dep't of Health & Rehab. Servs. v. Myers, 696 So. 2d 863, 865 (Fla. 4th DCA 1997).[1]

*Discussion*

We agree with the department, Garcia, and the Attorney General that the trial court acted in excess of its jurisdiction when it ordered the department to

---

[1] "The [d]epartment also has standing to being such a petition, despite the fact that it was not a party to the criminal case or commitment proceeding." C.Z., 201 So. 3d at 81 n.2.

5

involuntarily commit Garcia without evidence of a substantial probability he will respond to treatment and will likely regain competency. After a defendant is found incompetent to proceed, he may be involuntarily committed only if the trial court finds by clear and convincing evidence that the defendant meets the following criteria:

> (a) The defendant has a mental illness and because of the mental illness:
>
> 1. The defendant is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, the defendant is likely to suffer from neglect or refuse to care for herself or himself and such neglect or refusal poses a real and present threat of substantial harm to the defendant's well-being; or
>
> 2. There is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on herself or himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;
>
> (b) All available, less restrictive treatment alternatives, including treatment in community residential facilities or community inpatient or outpatient settings, which would offer an opportunity for improvement of the defendant's condition have been judged to be inappropriate; and
>
> (c) There is a substantial probability that the mental illness causing the defendant's incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future.

§ 916.13(1), Fla. Stat. (2017) (emphasis added).

6

Here, the only evidence the trial court had at the competency hearing was Dr. Mishara's report. Regarding the last involuntary commitment criteria – whether there was a substantial probability that the defendant's mental illness would respond to treatment and the defendant would regain competency in the foreseeable future – Dr. Mishara diagnosed Garcia with dementia. Dr. Mishara opined that Garcia's ability to understand was "impaired due to cognitive decline into dementia which happens to many seniors his age." Dr. Mishara believed "[i]t possible that [Garcia's] cognitive impairment from dementia [could] benefit superficially from appropriate treatment, but given his age, treatment [was] not likely to restore his competency to proceed appreciably." Dr. Mishara continued that "it [was] quite doubtful that [Garcia's] competency can be restored," and it was "likely that his dementia will progress, and he will experience more cognitive function loss with time." Given Dr. Mishara's opinion, which was the only one the trial court had to support its conclusion that Garcia met the criteria for involuntary hospitalization, the trial court could not have found by clear and convincing evidence that Garcia's dementia would respond to treatment and Garcia would regain competency in the foreseeable future.

The Fifth District has at least twice granted certiorari petitions from similar involuntary commitment orders where there was no evidence the defendant would

7

respond to treatment or regain competency. The courts' opinions are short and worth quoting in full:

> We grant the Department of Children and Families' petition for writ of certiorari and quash the trial court's order of continued commitment of the respondent, Teresa Ann Gilliland, an individual declared mentally incompetent to proceed to trial on two felony charges. The uncontradicted medical testimony presented to the trial court reveals that Gilliland suffers from dementia that will become progressively worse and that there is little or no probability that she will become competent in the future. Therefore, Gilliland no longer meets the criteria for commitment to the Department under section 916.13(1)(c), Florida Statutes. § 916.13(1)(c), Fla. Stat. (2006) ("Every defendant who is charged with a felony and who is adjudicated incompetent to proceed may be involuntarily committed for treatment upon a finding by the court of clear and convincing evidence that ... [t]here is a substantial probability that the mental illness causing the defendant's incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future."); Dep't of Children & Families v. Wehrwein, 942 So. 2d 947 (Fla. 5th DCA 2006) (granting petition for writ of certiorari and quashing lower court's order of commitment to Department of Children and Families; holding that although respondent was adjudicated incompetent to proceed to trial, respondent's commitment to the Department was improper under section 916.13(1)(c) because he suffered from a mental illness that was permanent and there was not a substantial likelihood that competency would be restored); Andrews v. Johnson, 941 So. 2d 494 (Fla. 1st DCA 2006) (same); Oren v. Judd, 940 So. 2d 1271 (Fla. 2d DCA 2006) (same).

Dep't of Children & Families v. Gilliland, 947 So. 2d 1262, 1262-63 (Fla. 5th DCA 2007) (alteration and omission in original).

> Petitioner, the Department of Children and Family Services, ("Department"), seeks a writ of certiorari quashing the trial court's order committing Respondent, Shannon Edward Ewell, to the Florida State Hospital for treatment to restore him to competency. The only

8

medical expert who evaluated Ewell opined that Ewell will not be able to reach competency through any known therapeutic program. Section 916.13(1)(c), Florida Statutes (2006), requires that before a defendant is committed to the Department for competency restoration, there must be "clear and convincing evidence that ... [t]here is a substantial probability that the mental illness causing the defendant's incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future." Because there was no evidence presented below to support Ewell's commitment pursuant to section 916.13(1)(c), we find the trial court departed from the essential requirements of the law by ordering Ewell's commitment for competency restoration. E.g., M.H. v. State, 901 So. 2d 197, 200 (Fla. 4th DCA 2005) (recognizing that "[w]here competent, substantial evidence does not support the trial court's finding regarding competency or involuntary commitment, the trial court has departed from the essential requirements of the law"). Therefore, we grant the petition, quash the order below, and remand this matter to the circuit court for further proceedings.

Ewell, 949 So. 2d at 327-28 (alteration and omission in original).

We also have uncontradicted evidence from the only medical expert who evaluated Garcia explaining Garcia's dementia will get progressively worse, and it is doubtful Garcia will be restored to competency. As in Gilliland and Ewell, the trial court exceeded its jurisdiction when it ordered the department to involuntary commit Garcia after he was found incompetent without evidence that he met the criteria under section 916.13(1)(c).

*Conclusion*

We quash the trial court's February 26, 2018 order to the extent it committed Garcia to the department for involuntary hospitalization pursuant to section 916.13(1). We remand this matter to the trial court for further proceedings.[2]

9

FERNANDEZ, J., concurring.

I wholeheartedly concur and write only to express my concern about the level of confidence expressed by Dr. Mishara in the results of the Brief Neuropsychological Cognitive Examination ("BNCE"), a mental status exam, due to the use of an interpreter to administer the test. The BNCE appears to be the test that resulted in the diagnosis of dementia. Dr. Mishara wrote in her report:

> To assess mental status BNCE was used. This instrument assesses major cognitive functions usually targeted by neuropsychological testing. Part 1 relates to more conventional types of information processing; and Part 2 subtests are aimed at the processing of novel incomplete and less conventional types of information. This latter is required for successful information processing of executive functions. It tends to decrease earlier and more sharply in those with progressive dementia or other assaults to the brain. His total score in the BNCE was 5 which placed him in the Severe Impairment category. Individuals with scores in this range cannot independently [sic]. His Part 2 score was notably lower than Part 1 meaning that his information processing functions [sic] was significantly compromised. Given his age, dementia adversely affecting the cognitive process was likely. **It should be pointed out, however, that having to administered [sic] the BNCE through an interpreter emphasizes that caution be exercised in appraising the accuracy of the results.**

(Emphasis added).

---

[2] Those further proceedings could include the state instituting civil commitment proceedings, releasing Garcia, Gilliland, 947 So. 2d at 1263, or the trial court, on its own motion, ordering Garcia to be examined by additional experts, Fla. R. Crim. P. 3.210(b). Because our review is by certiorari, we express no opinion on what the trial court should do on remand other than to quash the involuntary commitment part of the trial court's order.