NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CHRISTOPHER SCHOFIELD,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 2D18-4827
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
GRADY C. JUDD, Sheriff of Polk County⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀⠀)
_____)

Opinion filed April 3, 2019.

Petition for Writ of Habeas Corpus to the
Circuit Court for Polk County; J. Kevin
Abdoney, Judge.

Howard L. Dimmig, II, Public Defender,
Robert Young, General Counsel, and Scott
Toliver, Assistant Public Defender, Bartow,
for Petitioner.

Ashley Moody, Attorney General,
Tallahassee, and Cynthia Richards,
Assistant Attorney General, Tampa, for
Respondent.

Peter P. Sleasman and Kristen Cooley
Lentz, Gainesville, for Amicus Curiae
Disability Rights Florida.


LUCAS, Judge.

Christopher Schofield has filed a petition for a writ of habeas corpus and writ of certiorari challenging his continued detention in the Polk County jail for violating conditions imposed by the circuit court ostensibly under Florida Rule of Criminal Procedure 3.212(d). We previously granted Mr. Schofield's habeas petition by an unpublished order on January 24, 2019. This opinion explains why we so ruled.

I.

On December 12, 2015, Mr. Schofield was seen on Park Street in Lakeland selling the contents of an apartment. When asked by a Lakeland police officer how he had obtained access to the locked, vacant apartment complex, Mr. Schofield responded that he had purchased (or was in the process of purchasing) the entire complex from a woman he could only describe as "Mrs. Mary." He could not take the officer to meet Mrs. Mary, Mr. Schofield claimed, because he never traveled by roads to reach her residence. After making contact with the actual owner of the apartment complex, the officer arrested Mr. Schofield. He was eventually charged with burglary of an unoccupied dwelling, violation of a permanent domestic violence injunction,[1] and failure to register as a career offender.

Mr. Schofield's appointed counsel filed a motion to have Mr. Schofield's competence evaluated. After receiving a report and evaluation from a court-appointed expert, the circuit court entered an order on April 13, 2016, adjudicating Mr. Schofield incompetent to proceed. Pursuant to section 916.13(1), Florida Statutes (2015), he was

_____

[1]The protected individual under the permanent injunction was Mr. Schofield's mother, who, the officer determined, lived 129 feet from where Mr. Schofield was loitering.

2

committed to the Department of Children and Families (DCF) for the purpose of restoring his competency in the criminal case.

Mr. Schofield remained in a state hospital for approximately a year and a half. On September 22, 2017, a letter cosigned by the state hospital's facility administrator and its legal counsel was sent to the circuit court informing the presiding judge that Mr. Schofield was unlikely to regain competency in the foreseeable future. The letter further indicated that Mr. Schofield's "recovery team" was of the opinion that he would meet the criteria for involuntary examination under section 394.463, Florida Statutes (2016), of the Baker Act. The letter cited to Mosher v. State, 876 So. 2d 1230 (Fla. 1st DCA 2004), and suggested to the circuit court that "individuals whose competence is non-restorable no longer meet the criteria for commitment pursuant to [section 916.13, Florida Statutes (2017)] and therefore, should either be released or the State shall initiate civil commitment proceedings."

Mr. Schofield then filed a "Motion to Dismiss Due to Being Incompetent and Non-Restorable." The circuit court appointed another committee to evaluate Mr. Schofield, received their reports, and held a hearing, but decided to deny Mr. Schofield's motion because, according to the circuit court's order, five years had not yet elapsed since the time Mr. Schofield had been found incompetent.[2] However, the court did not initiate a Baker Act proceeding. Instead, on May 31, 2018, the circuit court entered an "Order Granting Release Following Commitment," which released Mr. Schofield from

_____

[2]This part of the court's order appears to be based upon section 916.145(1), Florida Statutes (2017): "The charges against a defendant adjudicated incompetent to proceed due to mental illness shall be dismissed without prejudice to the [S]tate if the defendant remains incompetent to proceed for 5 continuous, uninterrupted years after such determination . . . ."

3

State custody but subject to ten court-monitored conditions. These conditions included prohibitions against possession of any weapons or ammunition, consumption of alcohol, or possession of controlled substances without a prescription. The order also required Mr. Schofield to receive outpatient treatment at the Peace River Center, to "report for further evaluation at specified times during the release periods . . . as specified by the court," and to appear at subsequent court status hearings. In the order, the circuit court retained jurisdiction over Mr. Schofield and scheduled a status conference for November 19, 2018.

When Mr. Schofield failed to appear for the November 19 status conference, the circuit court issued a capias warrant for Mr. Schofield's arrest. Ten days later Mr. Schofield was brought before the court. During that hearing, the State informed the circuit court that not only had Mr. Schofield violated the court's release conditions, he had also been arrested for trespass and for violating an injunction order. With respect to the case that was before the court—which, again, Mr. Schofield had already been found incompetent and nonrestorable to proceed under—the presiding judge expressed some understandable frustration:

> THE COURT: [I] don't know what to do with him. I mean these cases sort of revert to pretrial release cases rather than commitment cases, meaning those rules govern what I'm supposed to do. The pretrial release rules, I should say. But then he remains incompetent, so he sits and rots in the jail, because he's committing new crimes while under orders of essentially pretrial release.
>
>     . . . .
>
> MR. TOLLIVER [counsel for Mr. Schofield]: And the idea that he's incompetent, I mean he couldn't resolve those cases if he chose to. He couldn't go to trial if he chose to. There's nothing he can do to resolve everything and release himself from jail to move forward in these cases.

4

We're — the way that the law is written for competency with this whole five day — five years and you can't move to dismiss prior to kind of leaves everyone's hands tied.

THE COURT: So maybe I should test it and just hold him in jail and leave it up to you to get the right rulings that are needed for these types of cases from a higher court.

I don't know what else to do, Mr. Tolliver, other than to hold him without bail having violated not only a condition of his release, but having committed a new crime while released . . . .

I don't know what else to do, and I would be happy to have some guidance as to what to do, because, you know, DCF is not going to pay for him anymore, because he doesn't meet the criteria. So . . . they can't help us find some residential placement for him where we can have some assurances that he's not going to be violating orders of the Court —

MR. TOLLIVER: Well, Your Honor —

THE COURT: — until the State is either willing to dismiss these charges or the time comes to dismiss the charges.

MR. TOLLIVER: There are mechanisms available to the State if they chose to go [that] route, they could.

THE COURT: Well, but they're the same . . . I assume you're talking about civil commitment.

MR. TOLLIVER: Correct.

THE COURT: The standard is the same. The criteria for civil commitment is identical to the criteria for commitment [for restoration under section 916.13]. So they could never prove that case if they sought civil commitment. . . . So I guarantee you if he were Baker Acted, he might be held for a few days or a few weeks, but then would be released without any civil commitment to follow because he doesn't respond to treatment.

MR. TOLLIVER: Well, I just — to make my record clear for the record is that it's our position that he ought to be released, because he has no ability to — he's incompetent

5

and he has no ability to be restored which has been previously determined.

The court disagreed and ruled that Mr. Schofield would be held in jail without bond for violating a condition in the May 31 order.[3]  Mr. Schofield now challenges that detention in the petition before us.

## II.

"The purpose of the ancient and high prerogative writ of habeas corpus is to inquire into the legality of a prisoner's present detention."  McCrae v. Wainwright, 439 So. 2d 868, 870 (Fla. 1983).  Habeas corpus is an appropriate and frequently invoked remedy to challenge the legality of a petitioner's pretrial detention or restraint.  See Bush v. State, 74 So. 3d 130, 133 (Fla. 1st DCA 2011); Schwartz v. Neumann, 731 So. 2d 746, 747 (Fla. 4th DCA 1999).[4]

---

[3]The circuit court found that the commission of a new crime while released constituted a violation of a condition of the May 31 order.  Technically, the court's order did not include a condition that prohibited committing or being arrested for allegedly committing criminal offenses.  The point is technical because the capias warrant that preceded Mr. Schofield's detention was based on his failure to appear at a noticed status hearing, which was a condition of the May 31 order.  Cf. Anglin v. Mayo, 88 So. 2d 918, 919-20 (Fla. 1956) ("If it appears to a court of competent jurisdiction that a man is being illegally restrained of his liberty, it is the responsibility of the court to brush aside formal technicalities and issue such appropriate orders as will do justice.  In habeas corpus the niceties of the procedure are not anywhere near as important as the determination of the ultimate question as to the legality of the restraint.").

[4]Challenges to civil commitment orders are frequently considered through certiorari.  See In re Commitment of Reilly, 970 So. 2d 453, 455 (Fla. 2d DCA 2007); Oren v. Judd, 940 So. 2d 1271, 1272 (Fla. 2d DCA 2006) (citing Patton v. State, 712 So. 2d 1206 (Fla. 1st DCA 1998)); Dep't of Children & Families v. Clem, 903 So. 2d 1011, 1012 (Fla. 5th DCA 2005); M.H. v. State, 901 So. 2d 197, 198 (Fla. 4th DCA 2005); Mosher v. State, 876 So. 2d at 1231; accord Horton v. Judd, 80 So. 3d 439, 439 n.1 (Fla. 2d DCA 2012) (noting that typically commitment orders are reviewed in certiorari, but "[a] challenge to an order of the trial court improperly committing a defendant for the purpose of restoring his competency may, however, be raised in a habeas proceeding" (citing Graham v. Jenne, 837 So. 2d 554, 555 (Fla. 4th DCA 2003))).  We elect to proceed in habeas here because Mr. Schofield's petition emanates

6

A.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). This prohibition, which goes back to the time of Blackstone, "is fundamental to an adversary system of justice." Id. at 172. Thus, a criminal prosecution may not proceed against a defendant who has been found incompetent. See McCray v. State, 71 So. 3d 848, 862 (Fla. 2011) ("It is well-settled that a criminal prosecution may not move forward at any material stage of a criminal proceeding against a defendant who is incompetent to proceed." (quoting Caraballo v. State, 39 So. 3d 1234, 1252 (Fla. 2010))); Hayes v. State, 343 So. 2d 672, 672 (Fla. 2d DCA 1977) ("The common-law rule which has long been recognized in Florida is that 'if at any time while [c]riminal proceedings are pending against a person accused of crime, whether before or during or after the trial, the trial court . . . has facts brought to its attention which raise a doubt of the sanity of the Defendant, the question should be settled before further steps are taken.' " (second alteration in original) (quoting Brown v. State, 245 So. 2d 68, 70 (Fla. 1971))); see also Fla. R. Crim. P. 3.210(a) ("A person accused of an offense . . . who is mentally incompetent to proceed at any material stage of a criminal proceeding shall not be

_____

from his incarceration (as opposed to civil commitment) for allegedly violating a condition of release under rule 3.212(d). See Bronson v. State, 89 So. 3d 1089, 1089 (Fla. 5th DCA 2012) (granting habeas relief to release petitioner from county jail where he had been found incompetent to proceed and there was "little or no probability that his competency will be restored in the future"). Because our consideration in habeas fully resolves the issues presented and grants all the relief Mr. Schofield has requested, we need not consider his alternative petition for certiorari and dismiss it as moot.

7

proceeded against while incompetent.").  Florida statutes now codify the substantive inquiries that underlie a competency determination.  See generally § 916.12.

Florida statutes also provide a mechanism through which an incompetent defendant may be committed and provided treatment for the purpose of restoring his or her competency.  See § 916.13.  That commitment procedure is subject to an important limitation, as we explained in Department of Children & Family Services v. Barnett, 124 So. 3d 430, 432-33 (Fla. 2d DCA 2013):

> [T]he court may commit a defendant only if that defendant "meets the criteria for involuntary commitment to the [D]epartment [of Children and Families] under the provisions of this chapter." § 916.13(2).  Those criteria include that there be "a substantial probability that the mental illness causing the defendant's incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future." § 916.13(1)(c). . . .  A court that commits a defendant in violation of these statutory requirements { "pageset": "S40 improperly encroaches on the legislature's authority to prescribe the limits of an agency's obligations and on an agency's obligation to expend its appropriated funds in accordance with the laws governing that agency.
> Moreover, doing so violates the rules of procedure promulgated by the supreme court, which provide that a court may commit a defendant for treatment only if "the defendant meets the criteria for commitment as set forth by statute." Fla. R. Crim. P. 3.212(c)(3)(A).

(Emphasis and citations omitted.)

As an alternative to residential commitment, section 916.17 authorizes a form of "conditional release," under the continuing supervision of the trial court, in which the incompetent defendant may receive treatment outside the confines of a section 916.13 residential commitment—but, here as well, only if the incompetent defendant would otherwise meet the criteria for commitment, which includes the "substantial

8

probability" that the defendant "will regain competency to proceed in the reasonably foreseeable future." § 916.13(1)(c); see also Dep't of Children & Families v. Carmona, 159 So. 3d 165, 167 (Fla. 2d DCA 2015); Dep't of Children & Families v. C.Z., 201 So. 3d 78, 83 (Fla. 3d DCA 2015). If, after residential commitment or conditional release, the defendant is found ineligible to remain in the DCF's custody because there is no reasonable prospect that the defendant's competency can be restored in the foreseeable future, then the question the circuit judge raised during Mr. Schofield's hearing—what should be done with the defendant—necessarily arises.

B.

The United States Supreme Court answered that question in Jackson v. Indiana, 406 U.S. 715 (1972). In Jackson, a criminal defendant who was deaf, mute, and operated at the "mental level of a pre-school child" was found incompetent to proceed in his prosecution for robbery. Id. at 717. Although the examining experts opined that the defendant was almost assuredly incapable of ever being able to assist in his defense, the trial court committed him indefinitely to a state hospital for treatment. Id. at 719. In reversing the Indiana Supreme Court's affirmance of that order, the Jackson Court held

> that a person charged by a [s]tate with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.

Id. at 738. "If," the Supreme Court continued, "it is determined that this is not the case, *then the State must either institute the customary civil commitment proceeding that*

9

*would be required to commit indefinitely any other citizen, or release the defendant.*"  Id. (emphasis added).

Florida's district courts of appeal, including ours, have repeated this instruction to our state's trial courts.  For example, in Mosher, 876 So. 2d at 1232, the First District granted a petition for certiorari challenging the continued detention of a defendant accused of aggravated battery who had been found incompetent to proceed due to her schizophrenia.  The trial court in Mosher had refused to release the defendant from involuntary commitment in spite of the fact that she did not meet the criteria for commitment under section 916.13(1) because it was "extremely unlikely" she could have her competency restored in the foreseeable future.  Id. at 1231.  After quoting the language of the Jackson opinion referenced above, the First District concluded: "Therefore, pursuant to Jackson, the State must either institute civil commitment proceedings or release her."  Id. at 1232 (footnote omitted).

Our court, in turn, quoted Mosher in Oren v. Judd, 940 So. 2d 1271, 1273-74 (Fla. 2d DCA 2006):

> In the present case, the circuit court did not find that there was a substantial probability that Oren's mental deficiencies would respond to treatment and that he would regain competency to proceed in the near future.  Indeed, there was no evidence—let alone clear and convincing evidence—presented at the competency hearing establishing a probability that Oren would regain competency.  To the contrary, it was established that Oren would never regain competency.  Clearly, then, Oren's involuntary commitment was not authorized by section 916.13(1).
>
> . . . .
>
> The [Mosher] court noted that at the hearing on Mosher's motion it was determined that there was no substantial probability that she would regain competency to

10

proceed in the reasonably foreseeable future. Therefore, she no longer met the criteria for involuntary commitment under section 916.13(1)(c). For that reason, the court held, the State must institute civil commitment proceedings or Mosher must be released. The facts in the present case compel the same result.

See also Bronson v. State, 89 So. 3d 1089, 1090 (Fla. 5th DCA 2012) ("According to the medical evidence, there is little chance that Petitioner will be restored to competency due to his cognitive deficits resulting from his stroke; therefore, he must be civilly committed or released from custody." (citing Roddenberry v. State, 898 So. 2d 1070, 1073 (Fla. 5th DCA 2005); Oren, 940 So. 2d 1271; Mosher, 876 So. 2d at 1230)); Dep't of Children & Families v. Gilliland, 947 So. 2d 1262, 1263 (Fla. 5th DCA 2007) (quashing trial court's order of continued commitment where the petitioner suffered from dementia and there was little or no probability that she would become competent in the future: "As the court explained in Oren, the State will have to institute civil commitment proceedings or Gilliland will have to be released").

We read the instruction in Jackson, repeated numerous times in Florida's jurisprudence, as clear and unequivocal. If an incompetent defendant cannot be restored to competency in the reasonably foreseeable future, the State can either institute a civil commitment proceeding or it can release the defendant. It is an either-or proposition. There is no third alternative that can be derived from Jackson on this point because the Court's direction to "release the defendant" does not brook anything besides an unconditional release.

C.

Having said that, we must acknowledge some confusion may have arisen in recent years. The source of which appears to be a procedural rule that does not

11

account for <u>Jackson</u>'s holding and three published opinions' citations to that rule.  In

<u>Graham v. Jenne</u>, 837 So. 2d 554, 559 (Fla. 4th DCA 2003), the Fourth District granted

an incompetent, nonrestorable defendant's petition for writ of habeas corpus but then, at

the conclusion of the opinion, offered the following suggestion (in what appears to be

dicta):

> Graham is incompetent to proceed to trial because he is a deaf mute and his sign language skills do not include legal terms required for him to either enter a plea or proceed to trial.  He does not meet the requirements of Chapter 916 for involuntary commitment to DCF.  However, Florida Rule of Criminal Procedure 3.212 provides other options. . . . Rule 3.212(d) allows a court to order appropriate release conditions for up to a year, including outpatient treatment at an appropriate local facility and reporting for further evaluation, if a defendant is not mentally competent but does not meet the criteria for commitment.

This is the first instance we have found in Florida law where rule 3.212(d) is mentioned

as a viable means for a circuit court to retain jurisdiction over and order "evaluation" (for

whatever unidentified benchmark) of a nonrestorable, incompetent defendant.[5]  Neither

the rule, the rule's commentary, nor the <u>Jenne</u> opinion mention the Supreme Court's

holding in <u>Jackson</u> or any Florida court opinion applying <u>Jackson</u>.

---

[5]Rule 3.212(d) provides, in pertinent part:

> If the court decides that a defendant is not mentally competent to proceed but does not meet the criteria for commitment, the defendant may be released on appropriate release conditions.  The court may order that the defendant receive outpatient treatment at an appropriate local facility and that the defendant report for further evaluation at specified times during the release period as conditions of release.  A report shall be filed with the court after each evaluation by the persons appointed by the court to make such evaluations, with copies to all parties.

12

Six years later, in <u>Abreu-Gutierrez v. James</u>, 1 So. 3d 262, 265 (Fla. 4th DCA 2009), a criminal defendant who had spent three years vacillating between competency and incompetency (in a state hospital and jail) filed a pro se petition for writ of habeas corpus with the circuit court challenging his continued commitment.  Faced with conflicting evidence about the petitioner's competency and overall mental health, the Fourth District observed that because the lower court did not find by clear and convincing evidence that a substantial probability existed that he could be restored to competency in the foreseeable future, Abreu's commitment "may be unlawful." <u>Id.</u> at 266.  But, the <u>Abreu</u> court concluded, the proper method to challenge a nonfinal order of commitment would be through a certiorari petition, and so it affirmed the denial of his habeas petition.  <u>Id.</u> at 266-67.  The court in <u>Abreu</u> then instructed the trial court to hold another hearing within thirty days from the date of the appeal's mandate "to consider Abreu's competency and his qualification for continued commitment." <u>Id.</u> at 267.  <u>Abreu</u> concluded with these final instructions:

> If Abreu's condition cannot be treated and he cannot be restored to competency, the state must initiate civil commitment proceedings pursuant to the Baker Act, or other pertinent statutes, or Abreu must be released.  <u>See</u> <u>Mosher</u>, 876 So.2d at 1232.  *If the trial court orders release, it should be based on appropriate conditions which should include monitoring and outpatient treatment*. <u>See</u> Fla. R. Crim. P. 3.212(d).

<u>Id.</u> (emphasis added).  Here as well, an unelaborated citation to rule 3.212(d) appears to be the sole basis for the suggestion to the circuit court that it could impose court-monitored conditions on the defendant's release if the defendant could not be restored to competency.

13

Later that same year, in Department of Children & Family Services v. Amaya, 10 So. 3d 152, 157 (Fla. 4th DCA 2009), the court reframed the suggestion in Abreu into a positive statement of the law: "The proper course when an incompetent defendant does not meet the criteria for commitment, and cannot be restored to competency, is for the State to initiate civil commitment proceedings under the Baker Act or for the court to release the defendant 'on appropriate conditions' as provided in Rule 3.212(d)." (citing Abreu, 1 So. 3d at 267; Gilliland, 947 So. 2d at 1263; Oren, 940 So. 2d at 1274; Mosher, 876 So. 2d at 1232).[6]

Since then, the implicit reformulation of Jackson's holding has been carried along in Florida law, intermittently and in differing variations, when an incompetent defendant who is ineligible for commitment under section 916.13 challenges his or her continued commitment. Compare Martire v. Gualtieri, 244 So. 3d 233, 233 (Fla. 2d DCA 2018) ("Should the trial court find that there is not a substantial probability that the petitioner will attain competency in the foreseeable future, the trial court shall release the petitioner under appropriate conditions pursuant to Florida Rule of Criminal Procedure 3.212(d) if the State does not initiate involuntary civil commitment proceedings."); State v. Spuhler, 243 So. 3d 1029, 1031-32 (Fla. 2d DCA 2018) (denying State's certiorari petition to require imposition of conditional release and holding that "[i]t is within the trial court's discretion" to impose conditions under rule 3.212(d)); McCray v. State, 230 So. 3d 495, 497 (Fla. 2d DCA 2017) ("In Mr. McCray's

---

[6]The string citation to the latter three cases is curious since the only cited opinion that actually included the internal quotation or citation to rule 3.212(d) was Abreu. As discussed previously, Gilliland, Oren, and Mosher all held that the State's options were to either initiate a civil commitment proceeding or "release the defendant," with no mention of any court-ordered conditions.

14

situation, '[t]he proper course when an incompetent defendant does not meet the criteria for commitment, and cannot be restored to competency, is for the State to initiate civil commitment proceedings under the Baker Act or *for the court to release the defendant on appropriate conditions as provided in* Rule 3.212(d).' " (quoting Amaya, 10 So. 3d at 157)); and Barnett, 124 So. 3d at 433 ("If the court orders release, it should consider whether appropriate conditions may again be lawfully imposed under rule 3.212(d).") with Williams v. State, 256 So. 3d 954, 957 (Fla. 1st DCA 2018) ("At a hearing, the State's evidence demonstrated that [Petitioner's] disorder would never improve and he would never attain competency.  It was error to find a substantial probability that [Petitioner] would attain competency in the reasonably foreseeable future based on a report making no such determination, particularly in the face of direct evidence to the contrary.  [Petitioner] must be civilly committed or released, and his charges dismissed."); C.Z., 201 So. 3d at 83-84 (explaining that "[w]hen a defendant is found non-restorable to competency and, therefore, does not meet the criteria for commitment, the next step is either to initiate civil commitment under the 'Baker Act' or to release the defendant" and remarking that "Florida Rule of Criminal Procedure 3.212(d) *purports to create* a short, safe harbor-like transition period before release, but only 'for a period not to exceed 1 year' " (emphasis added)); and Bronson, 89 So. 3d at 1090 (holding that incompetent defendant whose competency cannot be restored "must be civilly committed or released from custody").

For seven reasons, we do not believe any of these recent cases that have modified Jackson's clear instruction are controlling.  First, as we discussed earlier, Jackson's holding on what the State may do when a defendant is found incompetent and unlikely to become competent in the reasonably foreseeable future provided two,

15

and only two, options. The insertion of a third alternative, a court-monitored conditional release, conflicts with an express holding of the U.S. Supreme Court on a point of constitutional interpretation and, therefore, cannot be considered authoritative on that point. See Armstrong v. Exceptional Child Ctr., Inc., 135 S.Ct. 1378, 1384 (2015) (examining scope of the Supremacy Clause and observing "[f]or once a case or controversy properly comes before a court, judges are bound by federal law"); see also Marshall v. Crosby, 911 So. 2d 1129, 1135 (Fla. 2005) ("[T]his Court relies on the United States Supreme Court's admonition that lower courts should 'follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.' " (quoting Bottoson v. Moore, 833 So. 2d 693, 695 (Fla. 2002))). Second, any subsequent panel decision issued from our court that conflicts with our court's prior holding in Oren, 940 So. 2d at 1274 (which expressed Jackson's formulation), cannot be considered binding. See Wood v. Fraser, 677 So. 2d 15, 18 (Fla. 2d DCA 1996) ("[A]bsent an en banc opinion expressly receding from a point of law announced in previous opinions of this court, a trial court should not rely on the expressions of a three-judge panel as a basis to conclude that a previous opinion of another three-judge panel no longer carries the force of law."). Third, issues of constitutionality aside, there is no statutory authority to impose release conditions over a nonrestorable, incompetent defendant who is not eligible for commitment under section 916.13. Cf. Carmona, 159 So. 3d at 167 ("[T]he conditional release provisions of the statute and the rules implementing the statute indicate that conditional release under section 916.17 is appropriate *only when a defendant meets the criteria for commitment* to [DCF]." (emphasis added) (quoting Amaya, 10 So. 3d at 156)). Fourth, therefore, rule 3.212(d) could not be applied in these cases because, as we pointed out in Barnett, 124 So. 3d

16

at 433, "a court may commit a defendant for treatment only if 'the defendant meets the criteria for commitment as set forth by statute.' " (quoting Fla. R. Crim. P. 3.212(c)(3)(A)). Fifth, if indeed rule 3.212(d) purports to confer the sweeping power upon trial courts to impose conditions on a nonrestorable, incompetent defendant's right to be released from custody,[7] it would seem, as Mr. Schofield argues, to constitute a violation of the separation of powers between the legislative and judicial branches. See Boyd v. Becker, 627 So. 2d 481, 484 (Fla. 1993) ("While the Florida Constitution grants this Court exclusive rule-making authority, this power is limited to rules governing procedural matters and does not extend to substantive rights." (citing art. V, § 2(a), Fla. Const.; Timmons v. Combs, 608 So. 2d 1 (Fla. 1992); Benyard v. Wainwright, 322 So. 2d 473 (Fla. 1975))); Hines v. State, 931 So. 2d 148, 150 (Fla. 1st DCA 2006) ("When a statute confers a substantive right, a conflicting procedural rule is invalid as a violation of separation of powers under article II, section 3 of the Florida Constitution because a rule of procedure cannot enact substantive law."). And whatever may be said of the vagaries between substantive and procedural law,[8] state-sanctioned restraint on physical liberty must surely derive from substantive law. Cf. Adams v. Wright, 403 So. 2d 391, 394 (Fla. 1981) ("[S]ubstantive law includes those rules and principles which fix

---

[7]That does seem to have been the intent of the rule's drafters. In a committee note to the prior version of rule 3.212(d), it is stated: "This rule provides for the disposition of the defendant who falls under the third of the alternatives listed above, that he is incompetent to stand trial but does not meet the provisions for involuntary hospitalization. It is meant to provide as great a flexibility as possible for the trial judge in handling such defendant." See Committee note to Fla. R. Crim. P. 3.212, 1980 Adoption.

[8]Cf. Martin v. State, 43 Fla. L. Weekly D1016, D1017 (Fla. 2d DCA May 4, 2018) ("Discerning the precise contours between these distinctions [between substantive and procedural law] can occasionally pose a challenge").

and declare the primary rights of individuals as respects their persons and their property." (quoting In re Florida Rules of Criminal Procedure, 272 So. 2d 65, 66 (Fla. 1972) (Adkins, J., concurring))); State v. Garcia, 229 So. 2d 236, 238 (Fla. 1969) ("Substantive rights are those existing for their own sake and constituting the normal order of society, i.e., the rights of life, liberty, property[,] and reputation." (quoting In re Gogabashvele's Estate, 195 Cal. Rptr. 77, 90 (Cal. Ct. App. 1961))).  Sixth, the panel decisions that have authorized conditional release in these cases have never expressed a ratio decidendi for the anomaly it creates in settled jurisprudence—other than a rote citation to rule 3.212(d) or a prior opinion's citation to that rule.  And finally, seventh, as a practical matter, we must note that the enforcement of release conditions in these cases is, for all intents and purposes, illusory.  If a nonrestorable, incompetent defendant violates the terms of his or her conditional release, a trial court could neither lawfully punish the incompetent defendant for the violation, see McCray, 71 So. 3d at 862 ("[A] criminal prosecution may not move forward at any material stage of a criminal proceeding against a defendant who is incompetent to proceed." (quoting Caraballo, 39 So. 3d at 1252)), nor lawfully have the defendant committed to DCF under section 916.17, see C.Z., 201 So. 3d at 82-83 ("In our view, this subsection [of 916.17] does not and is not intended to create a separate statutory foundation for use by a trial court to order the Department [of Children and Families] to house and treat a mentally ill person who has been found non-restorable to competency to stand trial. . . .  The [l]egislature has not established a mental health program or service for individuals in C.Z.'s situation.").  Which is to say, a trial court could never meaningfully enforce the release conditions it imposes.  Cf. Easter v. City of Orlando, 249 So. 3d 723, 731 (Fla. 5th DCA 2018) (quoting circuit judge's remarks that "the law surely does not require . . .

18

pointless" or "fruitless action"). This trial court's attempt to navigate a better course for enforcing its release conditions over Mr. Schofield, though perhaps understandable, was no less unlawful.

III.

Consistent with Jackson, we once again hold that when a criminal defendant has been found incompetent to proceed and is not eligible for commitment pursuant to section 916.13 because there is no substantial probability that the defendant will regain competency in the reasonably foreseeable future, pursuant to Jackson, the State must either institute civil commitment proceedings or release that defendant. See Oren, 940 So. 2d at 1273-74 (citing Mosher, 876 So. 2d at 1232). Once the trial court determined that Mr. Schofield was incompetent and could not be restored to competency in the foreseeable future it had two choices: it could either initiate a Baker Act civil commitment proceeding, or it could release him—period. There was no lawful basis for the trial court to impose conditions on Mr. Schofield's release or to jail him for the violation of any of those conditions. Therefore, the petitioner is entitled to habeas relief.

Having so held, we will conclude with the observation we made in Barnett, which bears repeating here:

> While we certainly sympathize with the trial court's frustrations and unwillingness to contribute to potential chaos, we note that the rule of law simply does not permit a trial court to fashion its own remedy in derogation of statutory limitations, and good intentions cannot expand the trial court's power in this regard. It is up to the legislature—not the trial court or this court—to close any gaps that may exist in the statutory scheme and to address the inadequacies of the existing law when applied to facts such as these.

19

124 So. 3d at 433.

Petition granted.

KELLY and BADALAMENTI, JJ., Concur.