# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

DEPARTMENT OF CHILDREN AND FAMILIES,

Petitioner,

v.

MICHELET PIERRE and STATE OF FLORIDA,

Respondents.

No. 2D23-873

_____

November 15, 2023

Petition for Writ of Certiorari to the Circuit Court for Pinellas County; Pat Siracusa, Judge.

Alicia Victoria Gonzalez, Assistant General Counsel, Department of Children and Families, Tampa, for Petitioner.

Ashley Moody, Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Respondent, State of Florida.

No appearance for Respondent, Michelet Pierre.

SMITH, Judge.

The Department of Children and Families petitions this court for a writ of certiorari quashing an order committing Michelet Pierre to the Department's care and custody after he was found incompetent to

proceed on criminal charges. Because the record is devoid of clear and convincing evidence that Mr. Pierre "will respond to treatment and . . . will regain competency to proceed in the reasonably foreseeable future," Mr. Pierre does not meet the criteria required for involuntary commitment under section 916.13(1)(c), Florida Statutes (2022). Therefore, we grant the Department's petition and quash the order.

Mr. Pierre was charged with aggravated battery of a law enforcement officer, aggravated battery, resisting a law enforcement officer with violence, battery on a law enforcement officer, obstructing or resisting a law enforcement officer without violence, and battery after an incident during which Mr. Pierre was running from law enforcement and, after being struck with a taser, ran into oncoming traffic where he was hit by a pickup truck. Despite being knocked to the ground, Mr. Pierre stood back up and began running again from law enforcement. Ultimately, law enforcement caught up with Mr. Pierre and tackled him. He was then arrested and taken to the hospital where he continued to be combative while being treated for head trauma.

The issue of Mr. Pierre's competency was raised in the proceedings below, and he was evaluated by two separate mental health experts. Both experts opined that Mr. Pierre was incompetent to proceed with the criminal charges. Dr. Ohiana Torrealday first evaluated Mr. Pierre and opined that he was not competent to proceed or stand trial. While Dr. Torrealday recommended treatment in a secure residential setting, her report does not address whether Mr. Pierre can be restored to competency.[1] The second mental health expert who evaluated Mr. Pierre

_____

[1] The Department also argues that the trial court erred in relying on Dr. Torrealday's evaluation because it was more than six months old and, therefore, cannot provide evidence to support the trial court's

was Dr. Valerie McClain. She too opined that Mr. Pierre was not competent to proceed to trial. Dr. McClain recommended competency training in a structured, secured psychiatric setting but stated that "[Mr. Pierre's] prognosis for achieving competency is guarded given his apparent neurocognitive deficits." Dr. McClain "anticipated that it will be apparent if he can achieve competency within three months given this intervention" and recommended that further neurological evaluation was needed to determine the extent of Mr. Pierre's deficits.

The trial court relied on both experts' opinions and found that Mr. Pierre was incompetent to proceed and issued an order of commitment, placing Mr. Pierre in the custody of the Department. Relying on Dr. McClain's report, the trial court's order noted that it would be apparent if Mr. Pierre can achieve competency within three months of the recommended intervention.

In seeking certiorari relief, the Department argues that Mr. Pierre does not meet the statutory requirements of commitment because there was no evidence presented that Mr. Pierre's "incompetence will respond to treatment and [he] will regain competency to proceed in the reasonably foreseeable future." § 916.13(1)(c). We agree.

"[T]o obtain a writ of certiorari, there must exist '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.' " *In re Commitment of Reilly*, 970 So. 2d 453, 455

---

finding that Mr. Pierre was presently incompetent to proceed. *See In re Commitment of Reilly*, 970 So. 2d 453, 456 (Fla. 2d DCA 2007). Because we grant the petition on the basis that Mr. Pierre does not meet the criteria required for involuntary commitment under section 916.13, we decline to comment on the issue of whether Dr. Torrealday's evaluation of Mr. Pierre could support the trial court's finding of incompetence.

(Fla. 2d DCA 2007) (alteration in original) (quoting *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812, 822 (Fla. 2004)).  "As a general rule, certiorari is the proper vehicle for seeking this court's review of orders committing an individual involuntarily."  *Id.*; *see also Dep't of Child. & Fam. Servs. v. Amaya*, 10 So. 3d 152, 154 (Fla. 4th DCA 2009) ("Certiorari jurisdiction lies to review [the Department's] claim that the trial court has acted in excess of its jurisdiction by ordering [the Department] to undertake responsibilities beyond what is required by statute.").

For the trial court to involuntarily commit a defendant to the Department's custody, the defendant must meet the statutory criteria for involuntary commitment.  § 916.13(2) ("A defendant who has been charged with a felony and who has been adjudicated incompetent to proceed due to mental illness, and who meets the criteria for involuntary commitment under this chapter, may be committed to the department, and the department shall retain and treat the defendant."); *see also* Fla. R. Crim. P. 3.212(c)(3).  Listed among the statutory criteria, and relevant here, is the requirement that the trial court find by clear and convincing evidence that "[t]here is a substantial probability that the mental illness causing the defendant's incompetence <u>will</u> respond to treatment and the defendant <u>will</u> regain competency to proceed in the reasonably foreseeable future."  § 916.13(1)(c) (emphasis added).  "[A] finding that [a defendant] 'might' be restored to competency . . . does [not] satisfy the statutory requirement of clear and convincing evidence that there be a 'substantial probability' that the [defendant] will regain competency in the foreseeable future."  *Horton v. Judd*, 80 So. 3d 439, 440 (Fla. 2d DCA 2012).

4

The record in this case is void of any evidence that Mr. Pierre's "incompetence <u>will</u> respond to treatment" or that he "<u>will</u> regain competency to proceed in the reasonably foreseeable future." *See* § 916.13(1)(c). Dr. Torrealday's evaluation does not address whether Mr. Pierre can be restored to competency. And Dr. McClain's evaluation gives only a qualified opinion stating that Mr. Pierre's "prognosis for achieving competency is guarded" and that "[i]t is anticipated that it will be apparent if he can achieve competency within three months given [the recommended] intervention." Therefore, Mr. Pierre failed to meet the statutory criteria for involuntary commitment, and the trial court departed from the essential requirements of the law by ordering Mr. Pierre's commitment to the Department. *See Dep't of Child. & Fams. v. Botes*, 355 So. 3d 1047, 1050 (Fla. 2d DCA 2023) (holding the trial court erred in ordering involuntary commitment where there was no evidence that the defendant could be restored to competency); *Dep't of Child. & Fams. v. Musa*, 321 So. 3d 908, 910-11 (Fla. 2d DCA 2021) (concluding that the trial court departed from the essential requirements of the law in finding the defendant would regain competency to proceed in the reasonably foreseeable future where there was no evidence presented to support this finding, and, thus, the defendant did not meet the criteria for commitment); *Dep't of Child. & Fam. Servs. v. Barnett*, 124 So. 3d 430, 433 (Fla. 2d DCA 2013) (holding that a defendant that is not restorable to competency does not satisfy the requirements for involuntary commitment under section 916.13(1)(c)); *Oren v. Judd*, 940 So. 2d 1271, 1273-74 (Fla. 2d DCA 2006) (same); *Dep't of Child. & Fams. v. Garcia*, 245 So. 3d 919, 924 (Fla. 3d DCA 2018) ("[T]he trial court exceeded its jurisdiction when it ordered the department to involuntarily commit

Garcia after he was found incompetent without evidence that he met the criteria under section 916.13(1)(c).").

In its response to the petition, the State asks this court to provide additional guidance and "issue a ruling which would allow the State a finite period of time to conclusively determine, in a secure setting, the viability of restoring [Mr.] Pierre to competency." This request reaches beyond the scope of this court's authority, and we decline to entertain the request, although we recognize that the options left to the State are less than ideal when a defendant is deemed incompetent but there is no clear and convincing evidence as to when or if that defendant will regain competency—especially in cases like this where the possibility that the defendant may regain competency is not completely foreclosed.

However, the law clearly dictates that in situations like the one before us "the State must either institute civil commitment proceedings or release that defendant." *Schofield v. Judd*, 268 So. 3d 890, 900 (Fla. 2d DCA 2019) (citing *Oren*, 940 So. 2d at 1273-74); *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (explaining that where a defendant is incompetent and will not "attain that capacity in the foreseeable future . . . the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant"); *Bronson v. State*, 89 So. 3d 1089, 1090 (Fla. 5th DCA 2012) ("According to the medical evidence, there is little chance that [p]etitioner will be restored to competency due to his cognitive deficits resulting from his stroke; therefore, he must be civilly committed or released from custody." (first citing *Roddenberry v. State*, 898 So. 2d 1070, 1073 (Fla. 5th DCA 2005); then citing *Oren*, 940 So. 2d 1271; and then citing *Mosher v. State*, 876 So. 2d 1230, 1230 (Fla. 5th DCA 2012))); *Dep't of Child. & Fams. v. Gilliland*, 947 So. 2d 1262,

6

1263 (Fla. 5th DCA 2007) (granting certiorari relief where the defendant suffered from dementia and the medical testimony revealed little to no possibility that competency would be restored and explaining that the State's options were to either institute a civil commitment proceeding or release the defendant).

We explained our judicial constraints in *Barnett*:

> While we certainly sympathize with the trial court's frustrations and unwillingness to contribute to potential chaos, we note that the rule of law simply does not permit a trial court to fashion its own remedy in derogation of statutory limitations, and good intentions cannot expand the trial court's power in this regard. It is up to the legislature—not the trial court or this court—to close any gaps that may exist in the statutory scheme and to address the inadequacies of the existing law when applied to facts such as these.

124 So. 3d at 433.

Because there was no clear and convincing evidence that Mr. Pierre's condition will respond to treatment or that he will regain competency in the reasonably foreseeable future, Mr. Pierre failed to meet the criteria for involuntary commitment. For this reason, his commitment was not authorized by section 916.13, and the trial court departed from the essential requirements of the law when it ordered that Mr. Pierre be committed to the Department.

Petition for writ of certiorari granted; order of commitment quashed.

SILBERMAN and KELLY, JJ., Concur.

_____

Opinion subject to revision prior to official publication.